PATRICIA FAULKNER *v.* DANIEL DADDONA ET AL.
(AC 33854)

Beach, Robinson and Sheldon, Js.

Argued December 13, 2012—officially released April 23, 2013

*David Compagnone*, for the appellant (plaintiff).

*Jeffrey G. Schwartz*, for the appellees (defendant Kevin Conard et al.).

*Opinion*

SHELDON, J. The plaintiff, Patricia Faulkner, brought an action to recover damages for injuries she claims to have suffered in a motor vehicle accident on Route 262 in Watertown when she was thrown off the back of a motorcycle then being operated by Thomas Bouchard. The plaintiff now appeals from the judgment of the trial court rendered after it granted the motion to strike filed by the defendants Kevin Conard, John Gavallas and the town of Watertown.[1]

The plaintiff alleges that the accident occurred when, as she and Bouchard came upon the scene of a prior, unrelated motor vehicle accident to which Watertown police Officer Conard had already responded, a tow truck owned by Daniel Daddona, doing business as Watertown Auto Body, then being operated by his employee, Gregory Moscaritolo, suddenly pulled out onto and across the highway, blocking both lanes of travel. The truck's unexpected movement allegedly forced Bouchard to swerve his motorcycle behind the truck to avoid a collision, which caused the motorcycle to skid out of control and the plaintiff to be ejected from it onto the pavement.

The plaintiff made two sets of claims in this action. The first were claims against Daddona and Moscaritolo, based upon alleged negligence by the latter in operating Daddona's tow truck at the time and place of the accident. The second were claims against the town of Watertown and two of its employees, Officer Conard and police Chief John Gavallas, based upon, inter alia, alleged breaches of duties to the plaintiff and other members of the public to properly secure the scene of

---

[1] Daniel Daddona and Gregory Moscaritolo, the other defendants named in this action, are not parties to this appeal. We therefore refer in this opinion to Conard, Gavallas and the town, collectively, as the defendants, and individually by name.

the prior accident before the plaintiff came upon it and suffered her injuries and, more generally, to enforce certain town rules and regulations governing the performance of town towing services by private contractors.

With respect to Conard, who was present at the scene of the prior accident when the tow truck pulled out in front of Bouchard's motorcycle and caused the plaintiff's fall and resulting injuries, the plaintiff claimed that Conard "had an obligation to secure the scene of [the preexisting accident] in order to protect persons at the accident scene and members of the general public from harm," and that his failure to meet that obligation in several particular ways proximately caused her injuries. With respect to the town, the plaintiff made two claims, pursuant to General Statutes § 52-557n.[2] First, she claimed that the town had failed to properly train and supervise its officers and to establish protocols and procedures to secure an accident scene. Second, she claimed that the town had failed to adequately oversee towing operations undertaken on behalf of the town by failing to ensure that the towing company maintained the proper level of liability insurance coverage on its truck. Finally, as to Gavallas, the plaintiff claimed that he, like the town, had breached his duty to oversee the rules and regulations governing the towing of motor vehicles, by failing to ensure that the towing company maintained the proper level of liability insurance coverage on its truck.[3]

The defendants moved to strike all of the plaintiff's claims against them on two basic grounds. First, they

---

[2] General Statutes § 52-557n (a) (1) provides: "Except as otherwise provided by law, a political subdivision of the state shall be liable for damages to person or property caused by: (A) The negligent acts or omissions of such political subdivision or any employee, officer or agent thereof acting within the scope of his employment or official duties . . . ."

[3] The allegations against the defendants are contained in counts two, three, four and five of the plaintiff's first amended complaint dated August 26, 2010.

argued that no such claim stated a legally cognizable cause of action against them; and second, they argued that even if any of the plaintiff's claims was legally cognizable, any such claim was based upon alleged violations of a discretionary governmental duty, and thus was barred by the doctrine of governmental immunity. The plaintiff objected to the defendants' motion, arguing that all of her claims were legally cognizable, that no such claim could properly be challenged on the ground of governmental immunity on a motion to strike, and that even if a governmental immunity challenge could properly be brought on a motion to strike, none of her claims was vulnerable to such a challenge because each was either based upon the alleged breach of a ministerial duty or covered by the imminent harm, identifiable person exception to the governmental immunity doctrine.

On July 25, 2011, the court granted the defendants' motion to strike, concluding in relevant part as follows: "The plaintiff was unable to direct this court to any case law which suggested a private tort duty based upon the negligent securing of an accident scene by police or the allegations . . . regarding the [town] of Watertown and/or its chief of police failing to ascertain that the tow operator had the amount of insurance set forth in his contract with the town. The court can find no private legal basis for the assertion of th[ose] claims . . . . However, even assuming [that the challenged claims] set forth causes of action, the plaintiff must still overcome the hurdle that the[y] . . . are barred by the doctrine of government immunity. . . . While the plaintiff claims that the acts which form the basis of the allegations set forth in [those claims] . . . are ministerial, the court finds that the allegations in the amended complaint relate to discretionary acts, not ministerial acts. In determining whether there was an imminent harm, identifiable person exception to such

claimed immunity, the court finds that there was nothing apparent to . . . Conard or . . . Gavallas that the plaintiff would have been the subject of the alleged imminent harm." When the plaintiff failed, in the wake of this ruling, to replead her stricken claims within the time required by law, the court rendered judgment in favor of those defendants. This appeal followed.

On appeal, the plaintiff presents two challenges to the court's judgment as to three of the four counts that the court ordered stricken as to the defendants.[4] First, she claims that the court improperly concluded that she had failed to set forth legally cognizable causes of action in those stricken counts. Second, she argues that the court improperly concluded that such claims were barred by governmental immunity because they were all based upon alleged violations of ministerial rather than discretionary duties.[5] We conclude that the plaintiff's challenged claims against the defendants were all based upon alleged violations of discretionary duties and thus that they are all barred by governmental immunity. Accordingly, we conclude that the trial court did not err in granting the defendants' motion to strike and in rendering judgment in their favor.[6]

"Because a motion to strike challenges the legal sufficiency of a pleading and, consequently, requires no factual findings by the trial court, our review of the court's ruling on the [defendants' motion] is plenary. . . . We take the facts to be those alleged in the complaint that has been stricken and we construe the complaint in the manner most favorable to sustaining its

[4] The plaintiff does not appeal from the court's judgment striking her claim that the town failed to properly train and supervise its officers, and establish protocols and procedures to secure an accident scene.

[5] The plaintiff does not claim on appeal that her claims fell within the imminent harm, identifiable person exception to governmental immunity.

[6] We need not address the legal sufficiency of the plaintiff's claims against the defendants because, even if they are legally cognizable, they are barred by governmental immunity.

legal sufficiency. . . . Thus, [i]f facts provable in the complaint would support a cause of action, the motion to strike must be denied. . . . Moreover, we note that [w]hat is necessarily implied [in an allegation] need not be expressly alleged. . . . It is fundamental that in determining the sufficiency of a complaint challenged by a defendant's motion to strike, all well-pleaded facts and those facts necessarily implied from the allegations are taken as admitted. . . . Indeed, pleadings must be construed broadly and realistically, rather than narrowly and technically. . . .

"The [common-law] doctrines that determine the tort liability of municipal employees are well established. . . . Generally, a municipal employee is liable for the misperformance of ministerial acts, but has a qualified immunity in the performance of governmental acts. . . . Governmental acts are performed wholly for the direct benefit of the public and are supervisory or discretionary in nature. . . . The hallmark of a discretionary act is that it requires the exercise of judgment. . . . In contrast, [m]inisterial refers to a duty which is to be performed in a prescribed manner without the exercise of judgment or discretion. . . .

"Municipal officials are immunized from liability for negligence arising out of their discretionary acts in part because of the danger that a more expansive exposure to liability would cramp the exercise of official discretion beyond the limits desirable in our society. . . . Discretionary act immunity reflects a value judgment that—despite injury to a member of the public—the broader interest in having government officers and employees free to exercise judgment and discretion in their official functions, unhampered by the fear of second-guessing and retaliatory lawsuits, outweighs the benefits to be had from imposing liability for that injury. . . . In contrast, municipal officers are not immune

from liability for negligence arising out of their ministerial acts, defined as acts to be performed in a prescribed manner without the exercise of judgment or discretion. . . . This is because society has no analogous interest in permitting municipal officers to exercise judgment in the performance of ministerial acts. . . .

"The tort liability of a municipality has been codified in § 52-557n. Section 52-557n (a) (1) provides that [e]xcept as otherwise provided by law, a political subdivision of the state shall be liable for damages to person or property caused by: (A) The negligent acts or omissions of such political subdivision or any employee, officer or agent thereof acting within the scope of his employment or official duties . . . . Section 52-557n (a) (2) (B) extends, however, the same discretionary act immunity that applies to municipal officials to the municipalities themselves by providing that they will not be liable for damages caused by negligent acts or omissions which require the exercise of judgment or discretion as an official function of the authority expressly or impliedly granted by law. . . .

"We have previously determined that governmental immunity must be raised as a special defense in the defendant's pleadings. . . . Governmental immunity is essentially a defense of confession and avoidance similar to other defenses required to be affirmatively pleaded [under Practice Book § 10-50]. . . . The purpose of requiring affirmative pleading is to apprise the court and the opposing party of the issues to be tried and to prevent concealment of the issues until the trial is underway. . . . Nevertheless, [w]here it is apparent from the face of the complaint that the municipality was engaging in a governmental function while performing the acts and omissions complained of by the plaintiff, the defendant is not required to plead governmental immunity as a special defense and may attack the legal sufficiency of the complaint through a motion

to strike. Determining whether it is apparent on the face of the complaint that the acts complained of are discretionary requires an examination of the nature of the alleged acts or omissions." (Citations omitted; internal quotation marks omitted.) *Violano* v. *Fernandez*, 280 Conn. 310, 317–22, 907 A.2d 1188 (2006).

It is clear from the plaintiff's complaint that the defendants were performing governmental functions when they engaged in the conduct therein complained of, and thus that the court properly relied upon the doctrine of governmental immunity in granting the defendants' motion to strike those claims. The plaintiff contends initially that some of her claims against Conard involved alleged breaches of ministerial duties because they were based upon his alleged failure to enforce certain statutes or to follow certain provisions of the Watertown police department general orders. In fact, thirteen of the plaintiff's twenty allegations against Conard involved his alleged failure to enforce state statutes;[7]

---

[7] The plaintiff claimed that Conard breached his duties in that "he failed to enforce [General Statutes] § 14-235 by allowing . . . Moscaritolo to operate his vehicle on the left side of the highway on a curve or upgrade . . . he failed to enforce [General Statutes] § 14-240 (b) by allowing . . . Moscaritolo to operate his vehicle in proximity to another vehicle so as to impede the flow of traffic . . . he failed to enforce [General Statutes] § 14-242 (a) by allowing . . . Moscaritolo to operate his vehicle from a direct course on a highway when such movement could not be performed with reasonable safety . . . he failed to enforce [General Statutes] § 14-242 (a) by allowing . . . Moscaritolo to operate his vehicle without giving the appropriate signal in the manner provided in [General Statutes] § 14-244 . . . he failed to enforce [General Statutes] § 14-242 (b) by allowing . . . Moscaritolo to operate his vehicle without giving the appropriate signal to turn left or right at least 100 feet prior to turning . . . he failed to enforce [General Statutes] § 14-242 (c) by allowing . . . Moscaritolo to stop his vehicle without first giving the appropriate signal in the manner provided in [General Statutes] § 14-244 to the driver of any vehicle immediately to the rear when there is opportunity to give such signal . . . he failed to enforce [General Statutes] § 14-242 (d) by allowing . . . Moscaritolo to turn his vehicle to proceed in the opposite direction upon a curve, where such vehicle cannot be seen by the driver of any other vehicle approaching from either direction within 500 feet . . . he failed to enforce [General Statutes] § 14-242 (d) by allowing . . . Moscaritolo to turn his vehicle to proceed in the opposite direction upon the approach to a grade, where such vehicle cannot be seen by the

and five involved his alleged failure to comply with provisions of the Watertown police department general orders.[8] The fact that a claim is based upon a defendant's alleged failure to enforce a statute, however, does not, in and of itself, make enforcement of that statute a ministerial duty. See *Shore* v. *Stonington*, 187 Conn. 147, 444 A.2d 1379 (1982). Rather, a police officer's decision whether and how to enforce a statute necessarily requires an examination of the surrounding circumstances and a determination as to what enforcement action, if any, is necessary and appropriate in those

driver of any other vehicle approaching from either direction within 500 feet . . . he failed to enforce [General Statutes] § 14-242 (d) by allowing . . . Moscaritolo to turn his vehicle to proceed in the opposite direction near the crest of a grade, where such vehicle cannot be seen by the driver of any other vehicle approaching from either direction within 500 feet . . . he failed to enforce [General Statutes] § 14-243 (a) by allowing . . . Moscaritolo to move his vehicle from a stopped position when such movement could not be made with reasonable safety and without interfering with other traffic . . . he failed to enforce [General Statutes] § 14-243 (a) by allowing . . . Moscaritolo to move his vehicle from a stopped position when such movement could not be made with reasonable safety and without signaling as provided in § 14-244 . . . he failed to enforce [General Statutes] § 14-243 (b) by allowing . . . Moscaritolo to back up his vehicle when such movement could not be made with reasonable safety and without interfering with traffic . . . he failed to enforce [General Statutes] § 14-247 by allowing . . . Moscaritolo to operate his vehicle from an off road area without yielding the right of way to all vehicles approaching on such highway . . . ."

[8] The plaintiff claimed that Conard breached his duties in that "he failed to follow Watertown Police Department General Order 06-14, Section II, subsection A, entitled 'Procedure', by not taking the appropriate enforcement actions for violations of traffic laws by . . . Moscaritolo . . . that occurred within his presence . . . he failed to follow Watertown Police Department General Order 06-14, Directive V, section A, subsection 1, as a uniformed officer in a marked patrol unit not taking enforcement actions for violations of traffic laws by . . . Moscaritolo . . . that occurred within his view . . . he failed to follow Watertown Police Department General Order 06-14, Directive VI, section A, subsection 2, by not closing a section of the highway until the situation endangering the roadway safety could be corrected . . . he failed to follow Watertown Police Department General Order 06-14, Directive VI, section A, subsection 2, by not closing a section of the highway and utilizing flares and/or cones until the situation endangering the roadway safety could be corrected [and] he failed to follow Watertown Police Department General Order 06-15, Directive II, section A, by not positioning his cruiser to protect the vehicle and not using highway flares as needed."

circumstances. Such a decision thus invariably involves the exercise of judgment and discretion. Indeed, even if the command of a statute is mandatory, it is well settled that a police officer's decision whether or not to enforce the statute in particular circumstances is a matter that requires the exercise of judgment and discretion. See id.

As for Conard's alleged failure to comply with certain provisions of the Watertown police department general orders, they also do not impose mandatory duties upon police officers to take particular action in all circumstances. No such provision prescribes the particular manner in which an officer must always secure an accident scene. This, of course, is because all accident scenes are different from one another, and in fact are so different as to require that different measures be taken to secure them.[9] Consistent with this reality, even the general orders which the plaintiff claims to have been violated are replete with directives to officers to take "appropriate" action, as "necessary" or "reasonable" in the attending circumstances, rather than prescribing a single, unalterable method for securing the scene. Such directives describe duties whose performance requires the exercise of judgment and discretion, for which the officer is entitled to governmental immunity.

The plaintiff's final claim against Conard, which is not based upon an allegation that he failed to enforce a statute or to follow a general order, is that he failed to "close the trunk lid on his Watertown Police Cruiser [to avoid] obscuring his emergency lights to oncoming traffic . . . ." An officer's determinations whether or not to activate his emergency lights at an accident scene and, if so, whether he should open his trunk lid if it

---

[9] The plaintiff claimed generally that Conard "failed to follow Watertown Police Department Procedure for securing an accident scene . . . ."

might block oncoming motorists' view of the lights, are clearly judgments requiring the officer to assess the circumstances at the scene, which, in turn, require the exercise of judgment as to how best to proceed. The making of such discretionary determinations thus involves the performance of a governmental duty for which the defendants are entitled to governmental immunity. Therefore, Conard is entitled to governmental immunity as to each and every one of the plaintiff's specifications of negligence against him.

Turning to the plaintiff's allegations against the town and Gavallas, the plaintiff's claims of negligence against them stemmed from their alleged violation of various regulations and procedures for the towing of motor vehicles in the town. The plaintiff alleged that the town had a "duty to ensure that all rules and regulations for the towing of motor vehicles were followed" and that it breached that duty, inter alia, by failing to ensure that Moscaritolo had "experience in towing and recovery" and that Daddona had adequate insurance coverage on his tow truck. The plaintiff similarly alleged that Gavallas, acting in his capacity as the chief of police, had an "obligation to oversee the [r]egulations and [p]rocedures governing police towing of certain motor vehicles" and that he, like the town, breached that duty by failing, inter alia, to ensure that Moscaritolo had "experience in towing and recovery" and that Daddona had adequate insurance coverage. The trial court concluded that the plaintiff, by so pleading, had failed to "allege recognized causes of action" against the town and Gavallas, because she "was unable to direct this court to any case law which suggested a private tort duty based upon . . . the allegations . . . regarding the [town] and/or [Gavallas for] failing to ascertain that the tow operator had the amount of insurance set forth in his contract with the town." The plaintiff did not thereafter seek to replead her complaint to address the

deficiencies found by the trial court, nor did she seek an articulation of the court's conclusion that she had failed to set forth cognizable causes of action. An examination of the plaintiff's complaint reveals that she did not allege that the negligence of the town and/or Gavallas caused her injuries. "The essential elements of a cause of action in negligence are well established: duty; breach of that duty; causation; and actual injury." (Internal quotation marks omitted.) *Sic* v. *Nunan*, 307 Conn. 399, 406, 54 A.3d 553 (2012). Even, then, if the plaintiff had properly pleaded a breach of one or more legal duties owed to her by the town and Gavallas, and if the breach of such a duty gave rise to a private cause of action by her, she failed to plead two essential elements of a negligence claim, to wit: causation and actual injury. Accordingly, we conclude that the court properly struck the plaintiff's claims against Gavallas and the town for failure to state a claim upon which relief could be granted.

The judgment is affirmed.

In this opinion the other judges concurred.