GRACIELA CHIRIELEISON, ADMINISTRATRIX
(ESTATE OF JACQUELINE BARDALES
CHIRIELEISON) *v.* ROBERT S.
LUCAS ET AL.
(AC 34274)

DiPentima, C. J., Alvord and Bishop, Js.

Argued April 10—officially released July 30, 2013

*Bruce J. Corrigan, Jr.,* for the appellant (plaintiff).

*Aamina Ahmad,* assistant town attorney, for the appellees (named defendant et al.).

*Opinion*

ALVORD, J. The plaintiff, Graciela Chirieleison, administratrix of the estate of Jacqueline Bardales Chirieleison,[1] appeals from the summary judgment rendered in favor of the defendants, the town of Greenwich (town) and Robert S. Lucas,[2] on her wrongful death action. The plaintiff claims that the court improperly concluded that (1) both defendants were shielded from liability pursuant to the doctrine of qualified governmental immunity because Lucas was engaged in a discretionary governmental activity; (2) the decedent was not an identifiable person subject to imminent harm and, therefore, not within the exception to qualified governmental immunity; and (3) the plaintiff failed to establish a prima facie case of nuisance against the town. We affirm the judgment of the trial court.

The following facts and procedural history are undisputed or were set forth in the court's memorandum of

[1] Throughout this opinion, Graciela Chirieleison will be referred to as the plaintiff, and Jacqueline Bardales Chirieleison will be referred to as the decedent.

[2] The defendant Cos Cob Fire Police Patrol, Inc., and the apportionment defendants Rafael DeLaCruz, Fredie Perez, Ronald C. Metell, R. C. Metell Construction, Leonardo Sanchez and Elizabeth Jackson are not parties to this appeal. For convenience, we refer in this opinion to the town and Lucas as the defendants.

decision. At approximately 5:30 a.m. on September 30, 2007, a vehicle operated by Rafael DeLaCruz struck a car that had been abandoned on the shoulder of Interstate 95 North between exits 4 and 5. DeLaCruz' vehicle was engulfed in flames. The state police and the Cos Cob Fire Police Patrol, Inc. (fire patrol), a volunteer organization operating under the control of the town fire department, responded to the accident. Lucas, a firefighter, drove a 2004 Pierce fire truck to the scene of the accident and, upon arriving, parked the fire truck in a position such that it shielded the emergency response personnel from the traffic on the highway. At the direction of the scene commander, Lucas left the emergency lights on and positioned the fire truck to block the right and center lanes of the highway. Lucas exited the fire truck and, accompanied by another firefighter, placed warning flares in a line extending approximately 100 feet from the fire truck to the guardrail. Lucas and the other firefighter decided to set up a series of traffic cones as well, and they began to walk back to the fire truck to retrieve the traffic cones.

As the emergency personnel were responding to the accident, Reynaldo Sanchez, Gerson DeLeon and the decedent were returning from a dance club in New York City on Interstate 95 North in a car driven by Sanchez. At approximately 6:09 a.m., Sanchez veered out of the line of cars travelling in the left lane of the highway. The Sanchez vehicle crossed through the line of warning flares at a high rate of speed and collided with the fire truck. Sanchez and the decedent died as a result of the accident. DeLeon survived, but suffered severe memory loss and could not remember anything about the accident.

The plaintiff commenced a wrongful death action against the defendants and, on April 4, 2011, filed the

operative complaint.[3] The complaint contained three counts: in count one the plaintiff alleged negligence against the firefighter Lucas, in count two the plaintiff alleged negligence against the town and in count three the plaintiff alleged nuisance against the town. On September 9, 2011, the defendants filed a motion for summary judgment as to all three counts. As to count one, negligence against firefighter Lucas, the defendants claimed that Lucas was entitled to summary judgment because (1) he was engaged in discretionary governmental acts and no exception to discretionary act immunity was applicable to the facts of this case, and (2) the plaintiff did not comply with notice requirements owed to a volunteer firefighter and a municipality pursuant to General Statutes § 7-308.[4] As to count two, negligence against the town, the defendants claimed that the town was entitled to summary judgment because (1) its officers were engaged in discretionary governmental acts and no exception to discretionary act immunity was applicable to the facts of this case, and (2) the plaintiff did not establish a prima facie case of negligence. As to count three, nuisance against the town, the defendants claimed that the town was entitled to summary judgment because the plaintiff could not establish a prima facie case of nuisance.

On January 24, 2012, the court issued a memorandum of decision granting the defendants' motion for summary judgment as to all three counts. The court rendered summary judgment on count one after concluding

[3] The operative complaint is the second amended complaint. On March 16, 2011, the court granted a motion to strike two counts from the first amended complaint, thereby removing the fire patrol as a party to this action.

[4] The court found that the undisputed evidence presented in the defendants' motion for summary judgment supported a conclusion that Lucas met the qualifications of being a volunteer fireman engaged in his fire duties under § 7-308, but it determined that count one of the operative complaint alleged a violation of common-law negligence and that § 7-308 does not apply to a common-law negligence action. See *Rowe* v. *Godou*, 209 Conn. 273, 278, 550 A.2d 1073 (1988). On cross appeal, the defendants submit that the failure to comply with § 7-308 is an alternative basis on which we

that Lucas was shielded from liability pursuant to the doctrine of qualified governmental immunity because he was engaged in a discretionary act and no exception to discretionary act immunity was applicable. On count two, the court rendered summary judgment based on a similar qualified governmental immunity analysis, as well as a conclusion that the plaintiff failed to establish a prima facie case of negligence. On count three, the court rendered summary judgment after concluding that the plaintiff failed to establish a prima facie case of nuisance. This appeal followed.

As a threshold matter, we raise the issue of whether the plaintiff's claims with regard to count two are moot. "Mootness raises the issue of a court's subject matter jurisdiction and is therefore appropriately considered even when not raised by one of the parties. Mootness is a question of justiciability that must be determined as a threshold matter because it implicates [this] court's subject matter jurisdiction . . . . A determination regarding . . . [the Appellate Court's] subject matter jurisdiction is a question of law . . . ." (Citations omitted; internal quotation marks omitted.) *Lyon* v. *Jones*, 291 Conn. 384, 392, 968 A.2d 416 (2009).

In its memorandum of decision, the trial court rendered summary judgment on count two in favor of the town. The court determined that the town was shielded from liability pursuant to the doctrine of qualified governmental immunity because the town officials were engaged in discretionary governmental acts and no exception to discretionary act immunity was applicable under the circumstances of this case. The court continued its analysis of count two under a separate heading, which addressed the defendants' claim that the plaintiff had failed to establish a prima facie case of negligence.

can affirm summary judgment on count one. Because we affirm summary judgment on count one on other grounds, we need not reach this issue.

The court noted that "[i]n an automobile accident case, [a] plaintiff cannot merely prove that a collision occurred and then call upon the defendant operator to come forward with evidence that the collision was not a proximate consequence of negligence on his part." (Internal quotation marks omitted.) *Schweiger* v. *Amica Mutual Ins. Co.*, 110 Conn. App. 736, 741, 955 A.2d 1241, cert. denied, 289 Conn. 955, 961 A.2d 421 (2008). The court then found that the death of the decedent and Sanchez, coupled with DeLeon's lack of any memory of the accident, provided a "total lack of evidence . . . as to the proximate cause of the injury." As such, the court determined that the plaintiff had failed to present a genuine issue of fact that the town's negligence was the proximate cause of the accident and, accordingly, concluded that "summary judgment is granted as to the defendants' argument that the plaintiff has failed to provide any facts to support the claim of negligence."[5]

The plaintiff appeals the judgment rendered by the court that the town was protected by governmental immunity, but she does not appeal the ruling that the plaintiff failed to establish a prima facie case of negligence against the town. We can afford no relief to the plaintiff on her appeal with regard to count two because she did not appeal the court's judgment that the plaintiff failed to establish a prima facie case of negligence against the town. See *Lyon* v. *Jones*, supra, 291 Conn. 394–95 (failure to appeal from court's findings on collateral estoppel renders claims raised with respect to General Statutes § 46a-70 [a] moot because appellate court would "not be able to provide . . . any relief in light of the binding adverse finding with respect to those

---

[5] The court limited its discussion to the claim of negligence against the town because, in the defendants' motion for summary judgment, they only argued that the plaintiff failed to establish a prima facie case of negligence *against the town.* Accordingly, we treat the judgment on a failure to establish a prima facie case of negligence as only being rendered with regard to count two.

claims"); *Housing Authority* v. *Davis*, 57 Conn. App. 731, 732–34, 750 A.2d 1148, cert. denied, 254 Conn. 901, 755 A.2d 218 (2000) (court cannot provide practical relief on defendants' appeal from court's summary process judgment that their conduct constituted serious nuisance because they did not also appeal court's judgment that use, selling or possession of illegal drugs violated their public housing lease); *Grasso* v. *Connecticut Hospice, Inc.*, 138 Conn. App. 759, 765–66, 54 A.3d 221 (2012) (court cannot provide practical relief when plaintiff does not appeal judgment on counterclaim that is directly adverse to claim on appeal). Accordingly, we conclude that the plaintiff's claims with regard to count two are moot, and we do not review them.

The plaintiff's claims with regard to the two remaining counts of her complaint—negligence against Lucas and nuisance against the town—will be examined under our well established standard of review for summary judgment. "Practice Book § [17-49] requires that judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. A material fact is a fact that will make a difference in the result of the case. . . . The facts at issue are those alleged in the pleadings. . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue as to all material facts, which, under applicable principles of substantive law, entitle him to a judgment as a matter of law. . . . The party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. See Practice Book §§ [17-44 and 17-45]. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . A motion for summary judgment is properly granted if it raises at

least one legally sufficient defense that would bar the plaintiff's claim and involves no triable issue of fact. . . . Our review of the trial court's decision to grant a motion for summary judgment is plenary." (Internal quotation marks omitted.) *Mills* v. *The Solution, LLC*, 138 Conn. App. 40, 45–46, 50 A.3d 381, cert. denied, 307 Conn. 928, 55 A.3d 570 (2012).

I

The plaintiff first claims that the court improperly determined that Lucas was shielded from liability by the doctrine of qualified governmental immunity because his acts prior to the accident were ministerial and not discretionary. We disagree.

"The [common-law] doctrines that determine the tort liability of municipal employees are well established. . . . Generally, a municipal employee is liable for the misperformance of ministerial acts, but has a qualified immunity in the performance of governmental acts. . . . Governmental acts are performed wholly for the direct benefit of the public and are supervisory or discretionary in nature. . . . The hallmark of a discretionary act is that it requires the exercise of judgment. . . . In contrast, [m]inisterial refers to a duty which is to be performed in a prescribed manner without the exercise of judgment or discretion." (Internal quotation marks omitted.) *Violano* v. *Fernandez*, 280 Conn. 310, 318, 907 A.2d 1188 (2006).

The plaintiff argues that Lucas positioned the fire truck in accordance with the direction of the scene commander and the standards followed by the fire patrol. In support of this argument, the plaintiff directs this court to portions of Lucas' deposition testimony in which he stated that he was "directed" by the scene commander, that he was "instructed" to park the fire truck diagonally across the right and center lanes of

Interstate 95 and that there are "standards for positioning any fire apparatus on roads . . . ." Further, the plaintiff argues that the standards followed when the fire patrol responds to accidents are evidenced by the similarity between this accident and an incident that occurred approximately one year prior. In the prior incident, Lucas, acting in his official capacity, responded to an accident on Interstate 95 South by blocking the right and center lanes with the same fire truck to protect emergency response personnel, and a car collided with the fire truck. See *Kumah* v. *Brown*, 307 Conn. 620, 623, 58 A.3d 247 (2013).

The defendants argue that the positioning of a fire truck in response to an accident on a highway requires discretion and decision-making because each accident presents unique challenges and objectives. With regard to the plaintiff's argument that Lucas was directed to position the fire truck in a specific manner, Lucas testified at his deposition that he was instructed to block two lanes of traffic, but that he executed that instruction based on his experience. Further, Lucas testified that, in the approximately twenty-five other accidents on Interstate 95 to which he has responded, the manner in which he would position the fire truck "var[ied] according to the specifics [of the situation]" because "[e]very incident is different . . . ." He also testified that neither the town fire department nor the fire patrol had written policies, standards or procedures pertaining to positioning a fire truck or laying out cones or flares when responding to an accident.

We previously have stated that "all accident scenes are different from one another, and in fact are so different as to require that different measures be taken to secure them." *Faulkner* v. *Daddona*, 142 Conn. App. 113, 123, 63 A.3d 993 (2013). In this case, Lucas was required to use his judgment and decide how best to position the fire truck and the warning flares given

the circumstances with which he was presented. The evidence, viewed in the light most favorable to the plaintiff, reveals that Lucas received an oral instruction to park the fire truck across the right and center lanes of the highway with its emergency lights illuminated and that such a procedure is common in responding to accidents. This evidence does not qualify Lucas' actions as ministerial because, to the extent that any standards or directives existed in this case, Lucas still was required to use his judgment in their execution, and "[d]eterminations as to what is reasonable or proper under a particular set of circumstances necessarily involve the exercise of judgment and are, therefore, discretionary in nature." *Segreto* v. *Bristol,* 71 Conn. App. 844, 857, 804 A.2d 928, cert. denied, 261 Conn. 941, 808 A.2d 1132 (2002). Lucas determined the exact positioning of the fire truck and the warning flares based upon his experience and judgment as applied to the specific circumstances that existed on Interstate 95 North between exits 4 and 5 in the early morning hours of September 30, 2007. The court, therefore, properly concluded that Lucas' actions were discretionary in nature and, accordingly, that Lucas was shielded from liability by the doctrine of qualified governmental immunity.

II

The plaintiff next claims that the court improperly concluded that the decedent was not an identifiable person subject to imminent harm and, therefore, not within the exception to qualified governmental immunity. We disagree.

Because we determine that Lucas' actions were discretionary in nature, he is shielded from liability by the doctrine of qualified governmental immunity so long as his actions do not fall within any of the "three exceptions to discretionary act immunity. Each of these

exceptions represents a situation in which the public official's duty to act is [so] clear and unequivocal that the policy rationale underlying discretionary act immunity—to encourage municipal officers to exercise judgment—has no force. . . . First, liability may be imposed for a discretionary act when the alleged conduct involves malice, wantonness or intent to injure. . . . Second, liability may be imposed for a discretionary act when a statute provides for a cause of action against a municipality or municipal official for failure to enforce certain laws. . . . Third, liability may be imposed when the circumstances make it apparent to the public officer that his or her failure to act would be likely to subject an identifiable person to imminent harm . . . ." (Citations omitted; internal quotation marks omitted.) *Doe* v. *Petersen*, 279 Conn. 607, 615–16, 903 A.2d 191 (2006).

The plaintiff contends that the identifiable person in imminent harm exception is applicable in this case. That exception "requires three things: (1) an imminent harm; (2) an identifiable victim; and (3) a public official to whom it is apparent that his or her conduct is likely to subject that victim to that harm." Id., 616. "To prevail, the plaintiff must demonstrate that [the plaintiff's decedent] was an identifiable person *and* was subject to imminent harm *and* that a public officer's conduct subjected her to that harm, despite the apparent likelihood of harm to her." (Emphasis in original.) Id., 620. "The failure to establish any one of the three prongs precludes the application of the identifiable person subject to imminent harm exception." *Merritt* v. *Bethel Police Dept.*, 120 Conn. App. 806, 812, 993 A.2d 1006 (2010).

As to the second prong of the identifiable person subject to imminent harm exception, the plaintiff argues that the decedent was an identifiable victim because

she was within a class of foreseeable victims.[6] "With respect to the identifiable victim element, our Supreme Court has stated that this exception applies not only to identifiable individuals but also to narrowly defined identified classes of foreseeable victims. . . . [W]hether a particular plaintiff comes within a cognizable class of foreseeable victims for purposes of this narrowly drawn exception to qualified immunity ultimately is a question of law for the courts, in that it is in effect a question of whether to impose a duty of care. . . ." (Internal quotation marks omitted.) Id., 812–13. "[T]he only identifiable class of foreseeable victims that [our Supreme Court] ha[s] recognized for these purposes is that of schoolchildren attending public schools during school hours . . . ." (Internal quotation marks omitted.) *Grady* v. *Somers*, 294 Conn. 324, 352, 984 A.2d 684 (2009). Further, "[our Supreme Court] ha[s] interpreted the identifiable person element narrowly as it pertains to an injured party's compulsion to be in the place at issue . . . ." Id., 356. In addition to "not recogniz[ing] any additional classes of foreseeable victims outside of the public school context . . . even in such a context, such a class has only been recognized where attendance has been compulsory." *Merritt* v. *Bethel Police Dept.*, supra, 120 Conn. App. 814.

Connecticut appellate courts previously have declined to extend the identifiable person in imminent harm exception to the general public using roads and highways. See *Shore* v. *Stonington*, 187 Conn. 147, 157, 444 A.2d 1379 (1982); *DeConti* v. *McGlone*, 88 Conn. App. 270, 271, 275, 869 A.2d 271, cert. denied, 273 Conn. 940, 875 A.2d 42 (2005). We see no reason to deviate from this precedent. The class of foreseeable victims to which the plaintiff argues the decedent belonged—

---

[6] The plaintiff does not argue that the decedent was identifiable as an individual. See *Sestito* v. *Groton*, 178 Conn. 520, 522–23, 528, 423 A.2d 165 (1979).

people in automobiles on Interstate 95—is not narrowly defined because any member of the public could have chosen to travel Interstate 95 at that time. Further, the decedent was not compelled by any municipal or state mandate to be in an automobile on Interstate 95 at approximately 6:09 a.m. on September 30, 2007. The court, therefore, properly concluded that Lucas was shielded from liability by the doctrine of qualified governmental immunity because his acts were discretionary in nature and the decedent did not fall within the exception of an identifiable person in imminent harm.

## III

The plaintiff's third claim is that the court improperly concluded that the plaintiff failed to establish a prima facie case of public nuisance against the town. We disagree.

"Public nuisance law is concerned with the interference with a public right, and cases in this realm typically involve conduct that allegedly interferes with the public health and safety. . . . [A] plaintiff must prove four elements to succeed in a nuisance cause of action: (1) the condition complained of had a natural tendency to create danger and inflict injury [on] person or property; (2) the danger created was a continuing one; (3) the use of the land was unreasonable or unlawful; [and] (4) the existence of the nuisance was the proximate cause of the [plaintiff's] injuries and damages." (Citation omitted; internal quotation marks omitted.) *Burton* v. *Dominion Nuclear Connecticut, Inc.*, 300 Conn. 542, 561–62, 23 A.3d 1176 (2011). "In addition, when the alleged tortfeasor is a municipality, our common law requires that the plaintiff also prove that the defendants, by some positive act, created the condition constituting the nuisance." *Picco* v. *Voluntown*, 295 Conn. 141, 146, 989 A.2d 593 (2010). "Whether the elements necessary to establish a claim of nuisance have been proven is

. . . a question of fact which is ordinarily determined by the trier of fact." (Internal quotation marks omitted.) *Tomasso Bros., Inc.* v. *October Twenty-Four, Inc.*, 221 Conn. 194, 197, 602 A.2d 1011 (1992).

On appeal, the plaintiff claims that the blocking of two lanes of traffic by a fire truck on Interstate 95 is a public nuisance for which the town is liable pursuant to General Statutes § 52-557n (a) (1) (C).[7] She argues that the facts that gave rise to *Kumah* v. *Brown*, supra, 307 Conn. 623,[8] sufficiently put the defendants on notice that parking the fire truck across the right and center lanes of Interstate 95 had a natural tendency to create danger and inflict injury on people driving on the highway. The court found, however, that the plaintiff failed to demonstrate a substantial similarity between the accident in this case and the accident in *Kumah* such that *Kumah* would create any basis for the finding of nuisance in this case.[9] It noted that Lucas testified that

[7] General Statutes § 52-557n provides in relevant part: "(a) (1) . . . [A] political subdivision of the state shall be liable for damages to person or property caused by . . . (C) acts of the political subdivision which constitute the creation or participation in the creation of a nuisance . . . ."

[8] "In the early morning of September 3, 2006, Leo G. Brown was operating a tractor trailer in a westerly direction on Interstate 95 in [the town of] Greenwich. . . . Brown lost control of the tractor trailer, struck a jersey barrier and bridge railing, and eventually came to a stop in the right and center lanes of [the roadway]. Following the accident, Robert Lucas, a member of the Cos Cob fire police patrol, a volunteer organization operating in conjunction with the Greenwich fire department, responded to the scene. While assisting with the accident cleanup, Lucas parked a . . . fire truck diagonally across the center and right lanes . . . and also placed safety cones along the road to alert oncoming vehicles of the accident. Shortly thereafter, William Kumah, who also was driving his automobile . . . on Interstate 95 in Greenwich, collided with the parked fire truck, sustaining serious physical injuries . . . ." (Internal quotation marks omitted.) *Kumah* v. *Brown*, supra, 307 Conn. 623.

[9] Our Supreme Court in *Kumah* held that a plaintiff could use § 52-557n to bring a nuisance action against a municipality, declining to accept the defendants' argument that General Statutes § 13a-149 was the exclusive remedy against a municipality for damages arising out of injuries to a person or property caused by a defective road or bridge. In so doing, the court affirmed the denial of the defendants' motion to strike. *Kumah* v. *Brown*,

he had responded to hundreds of incidents on the highway and that the plaintiff provided no exhibits, testimony, expert opinions, or affidavits in support of her claim that the manner in which the fire truck was parked had a natural tendency to create danger and to inflict injury.

In our earlier discussion of the effect of the trial court's rendering of summary judgment on the basis of the plaintiff failing to establish a prima facie case of negligence against the town, we noted that "[i]n an automobile accident case, [a] plaintiff cannot merely prove that a collision occurred and then call upon the defendant operator to come forward with evidence that the collision was not a proximate consequence of negligence on his part." (Internal quotation marks omitted.) *Schweiger* v. *Amica Mutual Ins. Co.*, supra, 110 Conn. App. 741. As we previously stated, the plaintiff did not submit any evidence that the fire truck being parked across two lanes of Interstate 95—the alleged nuisance—was the proximate cause of the decedent's injuries.

Further, the court found no genuine issue with the facts that the defendants did not violate any statutory or other requirement and that the acts undertaken by the defendants in responding to the accident were reasonable and lawful. The court opined that to conclude that a fire truck blocking a public highway is unreasonable or unlawful, without any further factual support as to why that fire truck constituted a nuisance, would render meaningless the protection that General Statutes § 7-313e[10] provides to fire officers responding to an

supra, 307 Conn. 622–23. Denial of a motion to strike only has precedential value for determining the sufficiency of pleadings, which is not at issue in this case. See Practice Book § 10-39; *Cadle Co.* v. *D'Addario*, 131 Conn. App. 223, 230, 26 A.3d 682 (2011).

[10] General Statutes § 7-313e provides in relevant part: "[A]ny member serving in the capacity of fire officer-in-charge, shall, when any fire department or company is responding to or operating at a fire, service call, or other emergency, within such municipality, have the authority to . . . (c) block-

emergency. The plaintiff provided no further factual support as to why the fire truck constituted a nuisance.

We agree with the court's conclusions that the plaintiff failed to establish a prima face case of nuisance because she did not provide any proof that the positioning of the fire truck had a natural tendency to create danger and to inflict injury on person or property, that the town's actions were the proximate cause of the decedent's injuries, or that it was unreasonable or unlawful to park the fire truck across the right and center lanes of Interstate 95 to shield emergency personnel responding to an accident.

The judgment is affirmed.

In this opinion the other judges concurred.

ade any public highway, street, or private right-of-way temporarily while at such scene . . . ."