******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

GREGG FISK *v.* TOWN OF REDDING ET AL.
(AC 37537)

Alvord, Keller, and Schaller, Js.

*Argued December 8, 2015—officially released April 19, 2016*

(Appeal from Superior Court, judicial district of
Fairfield, Radcliffe, J.)

*A. Reynolds Gordon*, with whom was *Frank A. DeNicola, Jr.*, for the appellant (plaintiff).

*Jared Cohane*, with whom was *Luke R. Conrad*, for
the appellee (defendant BL Companies, Inc.).

*Opinion*

SCHALLER, J. The plaintiff, Gregg Fisk,[1] appeals from the summary judgment rendered in favor of the defendant BL Companies, Inc.,[2] in his absolute public nuisance action. The plaintiff alleged that he was injured when he fell off a retaining wall that was constructed as part of a municipal construction project for which the defendant was the design contractor. The court rendered summary judgment on the ground that the defendant, as a design contractor, was not a user of the wall and, therefore, as a matter of law could not be liable in public nuisance. On appeal, the plaintiff claims that the court erred in granting summary judgment. We affirm the judgment of the trial court.

The record reveals the following undisputed facts and procedural history. By substitute complaint, filed on October 7, 2014, the plaintiff alleged that he was injured when he fell off a retaining wall that was constructed with no protective fencing by M. Rondano, Inc. (Rondano), as contractor for the town of Redding (town). The defendant had been hired by the town to design, engineer, inspect and supervise the "Streetscape Project" (project) of which the wall was a part. The complaint alleged in separate counts against the town, Rondano, and the defendant that the wall was constructed on public land and constituted a public nuisance. In its answer, the defendant denied, inter alia, that it was required to supervise the project, that it was responsible for site safety, and that it had control over the retaining wall.

On September 17, 2014, the defendant filed a motion for summary judgment on the ground that it could not, as a matter of law, be deemed to have been in control of the project and therefore could not be liable under a nuisance theory. In support of the motion, the defendant filed a memorandum of law outlining its legal claims, and attached an affidavit of Derek A. Kohl, a principal of the defendant; portions of an agreement between the defendant and the town;[3] a construction report; specifications for roads, bridges and incidental construction by the Department of Transportation (department) dated January, 2010; a letter dated July 5, 2011, from the defendant on behalf of the town to the department; a document entitled scope of services; and several Superior Court cases. Kohl's affidavit averred that the defendant was the architect for the project and was primarily responsible for architectural and engineering services and did not install, perform or put into motion any physical act upon the wall. He further averred that the defendant did not have the ability to control the contractor or the construction site, or to advise as to site safety; those responsibilities were allocated to the contractor during the construction until the responsibilities reverted to the town.[4] The agreement specifies that the contractor will maintain the construction area

throughout the duration of the project.

The plaintiff filed a memorandum in opposition to the motion for summary judgment on September 26, 2014. He argued in the alternative that each defendant had control of the project, that design engineers can be liable in public nuisance for defective or dangerous construction that they create by their design, that the defendant had control over the project until it was completed in 2012, and that the project was not even substantially completed until October, 2011, after the plaintiff's fall. In support of these contentions, the plaintiff filed a certificate of compliance from the department dated October 25, 2011; a certificate of acceptance of work dated January 18, 2012; sections of the department's bridge design manual; the defendant's meeting minutes from June 16, 2011; further portions of the agreement between the town and the defendant; a department consultant administration and project development manual; an April 6, 2010 letter from the defendant regarding the status of the project; an excerpt from the deposition of Natalie Ketcham;[5] a department project manual for the project with the defendant's copyright notification; a department construction manual; the defendant's meeting minutes dated October 4, 2011; the affidavit of Brandon Smith; the affidavit of Skylar Smith with attached photographs of the wall; and a document entitled "Fielding deposition."

The court granted summary judgment in favor of the defendant in a memorandum of decision on December 5, 2014.[6] Citing *State* v. *Tippetts-Abbett-McCarthy-Stratton*, 204 Conn. 177, 527 A.2d 688 (1987) (*Tippetts*), it concluded that the plaintiff could not establish that the defendant was a user of the property in question when the plaintiff sustained injury. It noted that the plaintiff had failed to assert claims of professional negligence against the defendant. The plaintiff filed a motion to reargue on December 23, 2014, which the court denied on January 5, 2015.[7] The plaintiff argued that the court was incorrect in concluding that the defendant did not design the wall. The plaintiff subsequently appealed to this court.

We apply a well settled standard of review to the plaintiff's claim that the court improperly rendered summary judgment. "Practice Book § [17-49] requires that judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. A material fact is a fact that will make a difference in the result of the case. . . . The facts at issue are those alleged in the pleadings. . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue as to all material facts, which, under applicable principles of substantive law, entitle him to a judgment as a matter of law. . . . The party

opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. See Practice Book §§ [17-44 and 17-45]. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . A motion for summary judgment is properly granted if it raises at least one legally sufficient defense that would bar the plaintiff's claim and involves no triable issue of fact. . . . Our review of the trial court's decision to grant a motion for summary judgment is plenary." (Internal quotation marks omitted.) *Chirieleison* v. *Lucas*, 144 Conn. App. 430, 437–38, 72 A.3d 1218 (2013).

The plaintiff claims that the court improperly concluded the defendant did not design the wall, had no control over the wall, and no longer controlled the wall when the fall occurred. The defendant responds that neither the issue of whether the defendant actually designed the wall nor whether the defendant's role in the design of the wall had ceased is material to the question of whether the defendant had control of the wall for purposes of nuisance liability. It asserts that there is no genuine issue of material fact regarding whether the defendant controlled the wall, and, therefore, the court properly granted the defendant's motion for summary judgment. We agree with the defendant.

"A nuisance . . . describes an inherently dangerous condition that has a natural tendency to inflict injury upon persons or property. . . . The term nuisance refers to the condition that exists and not to the act or failure to act that creates it." (Citation omitted.) *Quinnett* v. *Newman*, 213 Conn. 343, 348, 568 A.2d 786 (1990), overruled on other grounds by *Craig* v. *Driscoll*, 262 Conn. 312, 329, 813 A.2d 1003 (2003). Our Supreme Court set out the standard for public nuisance liability in Connecticut in *Tippetts*, supra, 204 Conn. 183: "Our prior decisions have established that in order to prevail on a claim of nuisance, a plaintiff must prove that: (1) the condition complained of had a natural tendency to create danger and inflict injury upon person or property; (2) the danger created was a continuing one; (3) the use of the land was unreasonable or unlawful; [and] (4) the existence of the nuisance was [the] proximate cause of the plaintiffs' injuries and damages. . . . In this case, where absolute public nuisance is alleged, the plaintiff's burden includes two other elements of proof: (1) that the condition or conduct complained of interfered with a right common to the general public . . . and (2) that the alleged nuisance was absolute, that is, that the defendants' intentional conduct, rather than their negligence, caused the condition deemed to be a nuisance." (Citations omitted; internal quotation marks omitted.) "If the creator of the condition intends the act that brings about the condition found to be a nuisance, the nuisance thereby created is said to be absolute and its creator is strictly liable." *Quinnett* v.

*Newman*, supra, 348.

In *Tippetts*, our Supreme Court applied the requirement implicit in the phrase "the use of the land" in the third factor that the defendant be a user of the property. See *Tippetts*, supra, 204 Conn. 183–84. "Our case law has established no bright-line test to determine when a defendant's connection to a particular parcel of property suffices to make it an unreasonable or unlawful 'user' of that property. . . . In lieu of a rule of general application, our cases frequently have applied a functional test to determine whether a defendant 'uses' property in a manner sufficient to subject him to liability for nuisance. A critical factor in this test is whether the defendant exercises control over the property that is the source of nuisance." (Citations omitted.) Id. "[W]hen circumstances show that a defendant exercises de facto control over nuisance-causing property, the fact that title or possession of the property has been transferred to others does not absolve the defendant of liability for the nuisance." Id., 184. "Like the other elements of the tort of nuisance, the question of whether a defendant maintains control over property sufficient to subject him to nuisance liability normally is a jury question." Id., 185.

In *Tippetts*, the state brought an action against the firm that designed and supervised the construction of a bridge that collapsed twenty-four years after its construction. Id., 178. The trial court withdrew the nuisance claim from the jury; our Supreme Court concluded that this was tantamount to a directed verdict on this issue. Id., 182; see *Provencher* v. *Enfield*, 284 Conn. 772, 791, 936 A.2d 625 (2007) (holding that test for granting summary judgment is whether "the party moving for summary judgment would be entitled to a directed verdict on the same facts [internal quotation marks omitted]"). In analyzing the trial court's decision, our Supreme Court noted that the bridge was at all times state property, that nothing in the contract was purported to transfer the state's control over the property to the defendant in that all decisions by the defendant were subject to state approval, and finally that any delegation of authority was temporally limited and had ceased long before the bridge collapsed. *Tippetts*, supra, 204 Conn. 185–87. It then affirmed the trial court's decision not to charge the jury on public nuisance. Id., 187.[8]

This court has applied the *Tippetts* standard to nuisance claims in *Lomangino* v. *LaChance Farms, Inc.*, 17 Conn. App. 436, 438–39, 553 A.2d 197 (1989), and in *Heritage Village Master Assn., Inc.* v. *Heritage Village Water Co.*, 30 Conn. App. 693, 708–709, 622 A.2d 578 (1993) (*Heritage Village*). In *Lomangino*, this court reversed a trial court's granting of summary judgment. *Lomangino* v. *LaChance Farms, Inc.*, supra, 441. The trial court had held that the defendant mortgagee did not control the property on which the alleged nuisance

was located. Id., 439. This court applied *Tippetts*, but concluded that contrary to its assertion that it was a "mere conduit" of moneys, the defendant mortgagee covenanted not to allow waste on the property, was a party to a sales agreement in which it covenanted that the property owner would not do anything to abate the claimed nuisance, and possessed fee simple ownership over the property for seven to eight weeks. Id., 440–41. This court determined that these factors demonstrated that there was a genuine issue of material fact regarding control of the property and reversed the trial court. Id., 441. In *Heritage Village*, supra, 708–709, this court upheld the trial court's removal of a nuisance count from the jury where the plaintiff had claimed that the defendant caused it damage by providing water with an abnormally low pH count. It did so on two grounds, first that the provision of the water, which met governing standards regarding its use for purposes of human consumption, was not inherently dangerous, and second, citing *Tippetts*, that the alleged fault of the defendant lay not in its use of the property, but in its conduct in supplying water to the plaintiff. Id., 709.

The plaintiff argues that the defendant had control of the property because it had significant input into the design and construction of the project, and failed to include a fence in its design.[9] A nuisance, however, is the condition on the property, rather than the act that creates it. See *Quinnett* v. *Newman*, supra, 213 Conn. 348. *Tippetts*, *Lomangino*, and *Heritage Village* all focus on control or use of the physical property itself. Our Supreme Court in *Tippetts* held that "the defendants did not exercise sufficient control *over the bridge*, or the *property to which it was affixed* . . . ." (Emphasis added.) *Tippetts*, supra, 204 Conn. 187. *Lomangino* is distinguishable from *Tippetts* and the present case in that by entering into a covenant as to how the property would be used, the defendant in *Lomangino* exercised control over the physical property and could order that the alleged nuisance continue. See *Lomangino* v. *LaChance Farms, Inc.*, supra, 17 Conn. App. 440–41. In *Heritage Village*, this court held that the provision of services to users of the property did not equal use of the property. *Heritage Village*, supra, 30 Conn. App. 709. This conclusion is in line with *Tippetts* and with our conclusion in the present case.

An inquiry as to whether the defendant controlled the property is a means to determine whether the defendant had a sufficient connection to the property to be a user of that property. Even if there is an issue of material fact as to whether the defendant designed the wall, and even if the defendant's role in the project had not ceased at the time of the plaintiff's injury, nothing presented by the plaintiff rebuts the statement by the defendant's affiant, supported by the evidence submitted by the defendant, that the defendant had no control over the physical property. Most notably, the agreement states

that Rondano is responsible for site safety, maintenance, and operation during construction. Any input the defendant had into the design of the wall was mediated by either the town or Rondano. In *Tippetts*, our Supreme Court concluded that "[t]he plaintiff's delegation of its authority over the bridge project was temporally as well as functionally limited." *Tippetts*, supra, 204 Conn. 187. In the present case, we conclude that there was no evidence of delegation to the defendant of authority over the wall, therefore the defendant was not a user of the property.

The plaintiff also asserts that the defendant's inspection duties amounted to control over the property. The agreement states that the defendant, referred to as the Consulting Engineer, is required "[t]o furnish an inspection force at the level of and in the numbers established by negotiations for the construction engineering and inspection of this contract. The Resident Engineer/ Chief Inspector shall work under the general supervision of the Municipality's Municipal Administrator. All orders to the Municipality's contractor on site will be transmitted by the Consulting Engineer's Resident Engineer/Chief Inspector." In the context of the agreement, this language does not indicate any independent control over the property; the defendant was under the supervision of the town and would relay orders from the town to Rondano. Although the defendant may have inspected the property, made recommendations, and relayed orders, there is no genuine issue of material fact that the defendant lacked control over the property.

On the basis of the foregoing, the trial court properly concluded there was no genuine issue of material fact regarding whether the defendant had control over the property. Accordingly, the court properly granted the defendant's motion for summary judgment.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] Brandon Smith had brought a similar action, which the trial court consolidated with this action and in which the trial court granted summary judgment as to the defendant BL Companies, Inc., as well. Smith also appealed, but during the pendency of this appeal, withdrew his appeal.

[2] The town of Redding and M. Rondano, Inc., were also defendants in the underlying action, but summary judgment was granted only as to BL Companies, Inc., and, therefore, they are not participating in this appeal. Hereinafter, references in this opinion to the defendant are to BL Companies, Inc.

[3] The parties have both submitted portions of the agreement and do not contest its authenticity.

[4] Rondano is not identified as the contractor in the affidavit or in the attached portion of the agreement, but is identified as the contractor in the complaint.

[5] Ketcham was Redding's first selectman at the time of the accident.

[6] The court also denied Rondano's motion for summary judgment as to the plaintiff's claims, denied Rondano's motion for summary judgment as to a cross complaint filed by the town, and granted the plaintiff's motion to strike the special defenses of comparative negligence filed by all the defendants as inapplicable to an action sounding in absolute public nuisance.

[7] The plaintiff contends that the trial court was in error to deny his motion to reargue, but fails to provide analysis of this claim. We, therefore, decline

to review this claim.

[8] The plaintiff cited to the definition of control in *Panaroni* v. *Johnson*, 158 Conn. 92, 98, 256 A.2d 246 (1969): "The word 'control' has no legal or technical meaning distinct from that given in its popular acceptation . . . and refers to the power or authority to manage, superintend, direct or oversee." (Citation omitted.) In *Panaroni*, a tenant brought an action against a landlord alleging negligent maintenance of the leased premises. Id., 94. Landlord-tenant premises liability cases are distinguishable in that they are based on negligence, and the landlord, as owner of the property, has presumptive control over the property because the court's inquiry in these cases concerns whether the landlord has relinquished control over the specific area in which the injury occurred. See *Fiorelli* v. *Gorsky*, 120 Conn. App. 298, 308, 991 A.2d 1105 ("The general rule regarding premises liability in the landlord-tenant context is that landlords owe a duty of reasonable care as to those parts of the property over which they have retained control . . . . [L]andlords [however] generally [do] not have a duty to keep in repair any portion of the premises leased to and in the exclusive possession and control of the tenant." [Internal quotation marks omitted.]), cert. denied, 298 Conn. 933, 10 A.3d 517 (2010). Although the court in *Tippetts* referenced landlord-tenant cases in its decision, on the whole, landlord-tenant cases are distinguishable from public nuisance cases involving a defendant who has never been an owner of the property.

[9] The defendant asserts that the plaintiff's claim is really one for negligence, therefore it cannot be a nuisance claim. Some legal scholars have addressed the sometimes overlapping nature of nuisance and negligence liability: "The source of the harmful invasion of plaintiff's interest will often involve conduct or a condition for which defendant will be liable under ordinary principles of tort law independent of nuisance. The commonest example is probably negligence. Defendant may create a nuisance by negligence as where one's manufacturing operations are so conducted as to cause an unnecessary and unreasonable amount of smoke or fumes. . . . [F]amiliar principles of tort law will account for liability without any special regard to the peculiarities of nuisance. . . .

"The above discussion should dispose of the question sometimes put of drawing a distinction between nuisance and negligence. There may be nuisances that do not involve negligence, and there may be negligence that does not produce a nuisance (though it causes other injury). But negligence is one way in which a nuisance may be caused, and where that is the case there is no distinction—the two coalesce." (Footnotes omitted.) 1 F. Harper et al., Torts (3d Ed., 2006), § 1.23, pp. 100–102.

Our analysis is therefore focused on the nature of control as a requirement for use of property in Connecticut public nuisance case law, rather than attempting to draw a line between nuisance and negligence, which may or may not exist, depending on the case at issue.