******************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

## ONE EIGHTY-FIVE STAGG ASSOCIATES *v.*
## LINWOOD AVENUE III, LLC, ET AL.
### (AC 47206)

Alvord, Clark and Prescott, Js.

*Syllabus*

The plaintiff appealed from the trial court's judgment granting the defendants' motion for a directed verdict in the plaintiff's action seeking damages in connection with an oil leak from a tank on the named defendant's property that impacted the plaintiff's property. The plaintiff claimed, inter alia, that the court erred in granting the defendants' motion on the ground that the plaintiff failed to present sufficient evidence in support of its claims. *Held*:

The plaintiff waived its claims challenging the trial court's ruling with respect to the counts of the operative complaint alleging statutory causes of action and negligence per se, as the plaintiff failed to raise or brief any claim challenging the court's ruling with respect to those counts.

The trial court erred in directing a verdict for the defendants on the counts of the operative complaint alleging common-law negligence and common-law negligent nuisance, as there was sufficient evidence from which the jury could have found that the defendants were negligent, had control of the oil tank, and their negligence was a substantial factor in causing the plaintiff's damages.

The trial court abused its discretion in ordering the redaction of portions of certain account notes maintained by the oil company servicing the defendants' property following the oil spill, as the redacted portions were relevant to the issue of the defendant M's possession or control of the oil tank, and, even assuming that the redacted portions of the account notes constituted evidence of subsequent remedial measures, that evidence was admissible to prove M's control of the oil tank.

Argued January 6—officially released May 13, 2025

*Procedural History*

Action to recover damages for, inter alia, injuries sustained by the plaintiff as a result of the defendants' alleged negligence, and for other relief, brought to the Superior Court in the judicial district of Fairfield, where the court, *Reed, J.*, granted the plaintiff's motion to cite in Mary Jane McGoldrick in her capacity as conservator for Charles P. McGoldrick III as a defendant; thereafter,

the court, *Gould, J.*, granted the plaintiff's motion to strike the defendants' claim for a jury trial as to the counts seeking declaratory and injunctive relief and the remaining counts of the complaint were tried to the jury; subsequently, the court, *Gould, J.*, granted the defendants' motion for a directed verdict as to all counts and rendered judgment thereon, from which the plaintiff appealed to this court. *Reversed in part*; *new trial.*

*James A. Lenes*, for the appellant (plaintiff).

*Kelly E. Petter*, for the appellees (defendants).

*Opinion*

CLARK, J. The plaintiff, One Eighty-Five Stagg Associates, appeals from the judgment of the trial court granting the motion for a directed verdict in favor of the defendants, Linwood Avenue III, LLC (Linwood), Charles P. McGoldrick III (McGoldrick), and Mary Jane McGoldrick in her capacity as McGoldrick's conservator.[1] On appeal, the plaintiff claims that the court erred in (1) granting the defendants' motion for a directed verdict on the basis that the plaintiff failed to present sufficient evidence in support of its claims, and (2) ordering the redaction of certain statements contained in a documentary exhibit presented by the plaintiff. We agree with the plaintiff with respect to both claims and, accordingly, reverse in part the judgment of the trial court.[2]

---

[1] In this opinion, we refer to Mary Jane McGoldrick by her full name and to Charles P. McGoldrick III by his last name only.

[2] Although our conclusion that the court erred in directing a verdict in favor of the defendants is dispositive of this appeal, we address the plaintiff's second claim because it is sufficiently likely to arise on remand. See *Murchison* v. *Waterbury*, 218 Conn. App. 396, 412, 291 A.3d 1073 (2023) ("although our resolution of the defendant's first claim is dispositive of this appeal, because it is sufficiently likely to arise on remand, we will also address the defendant's second claim").

The plaintiff also claims that the trial court erred in granting a motion for a protective order and a motion to quash a subpoena for documents and testimony that the plaintiff had served on the defendants' liability insurer, and in precluding the admission of a report prepared by an engineer retained

The following facts, construed in the light most favorable to the plaintiff; see *Pellet* v. *Keller Williams Realty Corp.*, 177 Conn. App. 42, 49, 172 A.3d 283 (2017); and procedural history are relevant to this appeal. Linwood owns a residential property located at 284 Linwood Avenue in Fairfield. At the relevant time period, McGoldrick was the sole member and manager of Linwood. The plaintiff owns a commercial property located at 186 Linwood Avenue in Fairfield, which abuts 284 Linwood Avenue to the east.

The residence at 284 Linwood Avenue sits approximately fifteen feet from a commercial building at 186 Linwood Avenue, with a fence along the boundary line that separates the two properties. At the time of the events at issue, a 275 gallon oil tank was located outdoors at 284 Linwood Avenue adjacent to the eastern wall of the residence, approximately six or seven feet from the fence. On May 28, 2020, Santa Fuel, Inc. (Santa), delivered 184 gallons of heating oil to the tank at 284 Linwood Avenue. Six days later, on June 3, 2020, Santa received a service call for 284 Linwood Avenue reporting that there was no hot water at the property. A technician from Santa responded to the call and noted that the tank was empty and that the oil had leaked out of the bottom of the tank. Santa reported the oil spill to the Department of Energy and Environmental Protection (DEEP).

Shortly after the oil spill at 284 Linwood Avenue, DEEP contacted Christopher Kopley, a licensed environmental professional with Advanced Environmental Redevelopment, LLC (AER), and requested that he investigate whether the spill impacted 186 Linwood Avenue. DEEP was familiar with Kopley because he

by the same insurer. We decline to address these claims because we are not persuaded that they are sufficiently likely to arise on remand.

had managed environmental remediations and monitoring at 186 Linwood Avenue related to previous environmental contamination issues on other areas of the property. Kopley testified at trial and was admitted as an expert witness in the field of environmental remediation.

During his investigation, Kopley inspected the oil tank at 284 Linwood Avenue to determine the cause of the spill. Kopley looked inside the tank and noted that there were two holes in the bottom of the tank that appeared to be the result of corrosion and oil stains on the outside of the tank along the bottom in the area of the holes. A gauge at the top of the tank had been broken off, which would have allowed water to enter the tank. In addition, the tank was designed for indoor use only and was not designed to withstand exposure to temperature changes and precipitation.

Kopley testified that, to conduct a proper remediation, the extent of the contamination should be investigated as soon as possible and remediation efforts should begin in the area where the spill occurred. Contamination from an oil spill can spread through three different pathways, all of which should be investigated within days of the spill: through the soil, through the groundwater, and through vapors that migrate through the soil. If the contamination is not addressed in the area of the spill, the extent of the affected area will expand as the groundwater migrates to the surrounding areas. To prevent the contamination from spreading further than necessary and minimize the effects to the surrounding area, remediation should begin in the area of the spill soon after the event. The defendants, however, only excavated the soil directly beneath the spill site; they did not investigate or remediate any potential contamination to the groundwater or soil in the surrounding area. In addition, Kopley did not have permission from the defendants to investigate the contamination on the 284 Linwood Avenue property until

approximately three years after the spill and, even then, did not have authorization to investigate potential impacts from soil vapors.

Kopley installed monitoring wells on the 186 Linwood Avenue property to identify the area of the contamination on that parcel. Approximately one month after the spill, Kopley checked the monitoring wells and found that they contained evidence of heating oil in the soil and groundwater. At that time, AER manually removed as much of the contaminated soil as possible from the wells. AER continued to manually remove contaminated soil from the wells installed on the 186 Linwood Avenue property for approximately one year after the spill. Without addressing the contamination on the 284 Linwood Avenue property, however, it was not possible to complete the remediation solely from the 186 Linwood Avenue property. AER continued to monitor the wells at 186 Linwood Avenue through the date of trial; the week before trial, oil continued to seep into the wells.

On November 17, 2020, the plaintiff commenced the present action against Linwood and McGoldrick. On November 9, 2022, the plaintiff filed an amended complaint adding Mary Jane McGoldrick as a defendant in her capacity as conservator of McGoldrick.[3] The operative complaint contains ten counts. Counts one and two sound in common-law negligence and allege that the failure of McGoldrick and Linwood to exercise reasonable care in maintaining the 284 Linwood Avenue property "caused and continues to cause contamination of the air, soil and groundwater on, at, and beneath [186 Linwood Avenue]."[4] Counts three and four sound in

_____

[3] The record indicates that Mary Jane McGoldrick was appointed conservator of the person and estate of McGoldrick on December 14, 2020, and granted authority over McGoldrick's real property and business interests.

[4] Specifically, the complaint alleges that the defendants were negligent for, inter alia, "directing the activities that caused the [oil spill]," "failing to properly direct the activities which would have prevented the [oil spill]," "failing to exercise reasonable care in the maintenance of [284 Linwood

common-law negligent nuisance based on the same acts of negligence described in the first two counts. Counts five and six seek reimbursement from the defendants for the costs of remediation pursuant to General Statutes § 22a-452.[5] Counts seven and eight allege that the defendants "unreasonably polluted, impaired or destroyed . . . the public trust in the water and/or natural resources of the [state]," and seek declaratory and injunctive relief pursuant to General Statutes § 22a-16.[6] Counts nine and ten sound in negligence per se based on the defendants' alleged violation of General Statutes §§ 22a-16, 22a-427,[7] and 22a-430.[8]

Avenue]," "failing to inspect [284 Linwood Avenue] regularly or failing to exercise reasonable care in [their] inspection of [284 Linwood Avenue]," and "failing to property inspect and monitor the condition of the oil tank . . . ."

[5] General Statutes § 22a-452 provides in relevant part: "(a) Any person, firm, corporation or municipality which contains or removes or otherwise mitigates the effects of oil or petroleum or chemical liquids or solid, liquid or gaseous products or hazardous wastes resulting from any discharge, spillage, uncontrolled loss, seepage or filtration of such substance or material or waste shall be entitled to reimbursement from any person, firm or corporation for the reasonable costs expended for such containment, removal, or mitigation, if such oil or petroleum or chemical liquids or solid, liquid or gaseous products or hazardous wastes pollution or contamination or other emergency resulted from the negligence or other actions of such person, firm or corporation. When such pollution or contamination or emergency results from the joint negligence or other actions of two or more persons, firms or corporations, each shall be liable to the others for a pro rata share of the costs of containing, and removing or otherwise mitigating the effects of the same and for all damage caused thereby. . . ."

[6] General Statutes § 22a-16 provides in relevant part: "[A]ny person, partnership, corporation, association, organization or other legal entity may maintain an action in the superior court for the judicial district wherein the defendant is located, resides or conducts business . . . for declaratory and equitable relief against . . . any person, partnership, corporation, association, organization or other legal entity, acting alone, or in combination with others, for the protection of the public trust in the air, water and other natural resources of the state from unreasonable pollution, impairment or destruction . . . ."

[7] General Statutes § 22a-427 provides: "No person or municipality shall cause pollution of any of the waters of the state or maintain a discharge of any treated or untreated wastes in violation of any provision of this chapter."

[8] General Statutes § 22a-430 provides in relevant part: "(a) No person or municipality shall initiate, create, originate or maintain any discharge of

On August 24, 2022, the defendants filed a jury claim. On November 28, 2023, the plaintiff moved to strike the jury claim as to counts seven and eight on the basis that those counts sought declaratory and injunctive relief, which the plaintiff argued should be decided by the court rather than a jury. On December 4, 2023, prior to the commencement of evidence, the court, *Gould, J.*, heard argument on various pending matters. At that time, the defendants stated that they did not object to the plaintiff's motion to strike the jury claim with respect to counts seven and eight because they agreed that those counts sought only declaratory and injunctive relief and that whether to grant such relief is "a question for the court and not a question for the jury." The court granted the motion.

Trial commenced on December 7, 2023, at which the plaintiff presented the testimony of Peter Russell, the president of Santa; Kopley; and Michael Schinella, the managing member of the plaintiff. On December 12, 2023, after the plaintiff rested its case but before the defendants presented any evidence, the defendants orally moved for a directed verdict on the basis that the plaintiff did not present sufficient evidence of negligence, proximate cause, or that McGoldrick had possession or control of the oil tank. Following oral argument, the trial court, *Gould, J.*, granted the defendants' motion for a directed verdict as to all counts.[9] In its oral ruling

water, substance or material into the waters of the state without a permit for such discharge issued by the [Commissioner of Energy and Environmental Protection]. . . ."

[9] We note that, when a case is tried to the court, the proper mechanism for challenging the sufficiency of the evidence at the close of the plaintiff's case is a motion to dismiss pursuant to Practice Book § 15-8, rather than a motion for directed verdict. Following oral argument, on February 21, 2025, this court, for the purpose of ascertaining whether the plaintiff had appealed from a final judgment, sua sponte ordered the trial court to articulate whether its order granting the motion for directed verdict also disposed of counts seven and eight of the amended complaint—which, as noted previously in this opinion, were tried to the court—and, if so, whether the court rendered judgment on all counts of the amended complaint. On April 2, 2025, the

explaining its reasoning for granting the motion, the court only addressed the negligence issues raised by the defendants; the court did not address any of the plaintiff's statutory claims. Judgment in favor of the defendants was rendered the same day. This appeal followed. Additional facts and procedural history will be set forth as necessary.

I

The plaintiff first claims that the trial court erred in granting the motion for a directed verdict. In making that claim, the plaintiff focuses solely on the elements of negligence addressed by the court, arguing that there was sufficient evidence presented from which a jury reasonably could have found in favor of the plaintiff with respect to each element. We agree with the plaintiff that the court erred in directing a verdict in favor of the defendants on counts one through four of the complaint alleging common-law negligence and nuisance. We further conclude that the plaintiff abandoned any claim challenging the court's ruling with respect to counts five through ten of the complaint.

We begin by setting forth the standard of review applicable to the plaintiff's claim. "Whether the evidence presented by the plaintiff is sufficient to withstand a motion for a directed verdict is a question of law, over which our review is plenary. . . . Directed verdicts are not favored. . . . A trial court should direct a verdict only when a jury could not reasonably and legally have reached any other conclusion. . . . In reviewing the trial court's decision [to grant a defendant's motion for a directed verdict] we must consider

court, *Gould, J.,* issued an articulation stating that it had "granted the defendants' motion for a directed verdict as to all counts of the complaint" and that "[j]udgment entered forthwith." Accordingly, we treat the order granting a directed verdict as to counts seven and eight as a dismissal pursuant to Practice Book § 15-8. See, e.g, *McMillion* v. *Commissioner of Correction,* 151 Conn. App. 861, 866 n.6, 97 A.3d 32 (2014).

the evidence in the light most favorable to the plaintiff. . . . A directed verdict is justified if . . . the evidence is so weak that it would be proper for the court to set aside a verdict rendered for the other party." (Internal quotation marks omitted.) *Farrell* v. *Johnson & Johnson*, 335 Conn. 398, 416–17, 238 A.3d 698 (2020).

In assessing whether the evidence was sufficient to survive a motion for a directed verdict, we emphasize that "[i]t is [the] function of the jury to draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical." (Internal quotation marks omitted.) *Curran* v. *Kroll*, 303 Conn. 845, 856, 37 A.3d 700 (2012). "[P]roof of a material fact by inference from circumstantial evidence need not be so conclusive as to exclude every other hypothesis. It is sufficient if the evidence produces in the mind of the trier a reasonable belief in the probability of the existence of the material fact. . . . Thus, in determining whether the evidence supports a particular inference, we ask whether that inference is so unreasonable as to be unjustifiable. . . . In other words, an inference need not be compelled by the evidence; rather, the evidence need only be reasonably susceptible of such an inference." (Emphasis omitted; internal quotation marks omitted.) *Procaccini* v. *Lawrence + Memorial Hospital, Inc.*, 175 Conn. App. 692, 717, 168 A.3d 538, cert. denied, 327 Conn. 960, 172 A.3d 801 (2017).

"This court has emphasized two additional points with respect to . . . motions for a directed verdict: First, the plaintiff in a civil matter is not required to prove his case beyond a reasonable doubt; a mere preponderance of the evidence is sufficient. Second, the well established standards compelling great deference to the historical function of the jury find their roots in the constitutional right to a trial by jury." (Internal

quotation marks omitted.) *Pellett* v. *Keller Williams Realty Corp.*, supra, 177 Conn. App. 48.

The following additional procedural history is relevant to the plaintiff's claim. On December 8, 2023, during the cross-examination of Kopley, the defendants moved to strike "any testimony from [Kopley] with respect to the alleged [cause] of the failure [of the oil tank]." The defendants argued that Kopley's testimony at trial that he inspected the oil tank was inconsistent with a portion of his deposition testimony, in which he testified that he had not been to the 284 Linwood Avenue property and had not done any "investigative or remediative work" on that property. The trial court reserved ruling on the defendants' motion. On redirect examination, Kopley testified that he had, in fact, been to the 284 Linwood Avenue property to inspect the oil tank, as evidenced by photographs that he took of the tank and the location of the oil spill, which were attached to one of his reports and admitted into evidence as full exhibits. Kopley further clarified that, when he testified at his deposition that he had not done any "investigative or remediative work" at 284 Linwood Avenue, he meant that he had not investigated the impact of the spill or conducted any remediation work on that property.

In their oral motion for a directed verdict, the defendants asked the court to direct a verdict in their favor "as to all counts against all defendants." During oral argument on the motion, however, the defendants focused only on issues related to the plaintiff's negligence claims. First, the defendants renewed their previous request to strike the portions of Kopley's testimony regarding the cause of the oil tank failure, as well as the portions of reports authored by Kopley related to the same issue, and argued that there was no admissible evidence establishing that the defendants' negligence caused the tank to leak.

Second, the defendants argued that the court should direct a verdict as to all counts against McGoldrick in his individual capacity because the plaintiff failed to present evidence that he "individually has a legal duty with respect to the property at issue or the fuel oil tank at issue." The defendants further argued that "[t]here has been absolutely no evidence that [McGoldrick] individually had possession or control of 284 Linwood Avenue or that he created the defect at issue." The defendants further argued that the plaintiff did not present any evidence that would allow the court to pierce the corporate veil and hold McGoldrick personally liable for the acts of Linwood.

With respect to the defendants' argument regarding Kopley's inspection of the oil tank, the plaintiff argued that Kopley had clarified on redirect examination that he did inspect the oil tank and that his testimony regarding the cause of the oil spill was supported by photographs that were admitted into evidence. The plaintiff further argued that any inconsistency between Kopley's trial testimony and his deposition was an issue for the jury and did not render the plaintiff's evidence insufficient as a matter of law. With respect to McGoldrick, the plaintiff argued that evidence that he personally dealt with Santa in connection with the oil tank and that he was the sole member and manager of Linwood was sufficient for the jury to find him personally liable. The plaintiff further noted that the complaint contained additional counts not specifically addressed by the defendants, arguing: "We have negligen[ce] per se counts. We have many different counts that would mean he had to have some duty. He has a duty not to create a nuisance. An oil spill, we have an argument there [that's] a nuisance. There's many levels here that can be addressed. I don't think [McGoldrick] should be able to escape liability on the basis of that argument."

In its oral ruling granting the defendants' motion, the court did not separately address each count of the complaint. Rather, the court's oral decision focused only on the issues related to negligence raised by the defendants, without articulating whether those issues also applied to the plaintiff's statutory claims. Specifically, the court stated that "the plaintiff must prove the defendants owed a duty to the plaintiff and somehow breached that duty. Reviewing the evidence in a light [most] favorable to the plaintiff, the plaintiff has only shown that there was an above ground oil tank that had some kind of marking on it that said indoor tank, it was on the defendant's property, it had a hole in it, and there was [heating] oil in the ground. The court has not heard a scintilla of evidence that the defendants were negligent, how they were negligent, and that the alleged negligence was the proximate cause of the plaintiff's damages. There has been no evidence that the defendant, either McGoldrick or [Linwood], was in possession or control of the oil tank. Merely making those allegations in a complaint is not enough. For those reasons the defendants' motion for directed verdict as to [all] defendants is granted."

## A

Before addressing the merits of the plaintiff's claim that the court erred in granting the defendants' motion for a directed verdict, we clarify the scope of the plaintiff's challenge to that ruling. As discussed previously, the court's oral ruling on the defendants' motion for a directed verdict focused solely on issues related to whether the plaintiff established negligence. The court did not expressly address the plaintiff's statutory claims.

On appeal, the plaintiff argues only that the court erred in granting a directed verdict because there was sufficient evidence that the defendants were negligent,

had possession and control of the oil tank, and proximately caused the plaintiff's damages. The plaintiff's arguments plainly are sufficient to challenge the trial court's ruling as applied to counts one through four of the complaint alleging common-law negligence and negligent nuisance because both causes of action required the plaintiff to prove that the defendants were negligent and that such negligence caused the plaintiff's damages. See *Pestey* v. *Cushman*, 259 Conn. 345, 361, 788 A.2d 496 (2002) ("[I]n order to recover damages in a common-law private nuisance[10] cause of action, a plaintiff must show that the defendant's conduct was the proximate cause of an unreasonable interference with the plaintiff's use and enjoyment of his or her property. The interference may be either intentional . . . or the result of the defendant's negligence." (Citation omitted; footnote added.)); see also *Fisk* v. *Redding*, 164 Conn. App. 647, 656 n.9, 138 A.3d 410 (2016).[11]

[10] This case deals with a private nuisance because it is "concerned with conduct that interferes with an individual's private right to the use and enjoyment of his or her land." *Pestey* v. *Cushman*, supra, 259 Conn. 357. In contrast, "[p]ublic nuisance law is concerned with the interference with a public right, and cases in this realm typically involve conduct that allegedly interferes with the public health and safety." Id.

[11] In *Fisk*, this court recognized that "a line between nuisance and negligence . . . may or may not exist, depending on the case at issue." *Fisk* v. *Redding*, supra, 164 Conn. App. 656 n.9. In that case, the plaintiff claimed that the trial court improperly granted summary judgment in favor of the defendant on the plaintiff's nuisance claim. Id., 648–49. On appeal, the defendant "assert[ed] that the plaintiff's claim is really one for negligence; therefore it cannot be a nuisance claim." Id., 656 n.9. Citing commentary from legal scholars "address[ing] the sometimes overlapping nature of nuisance and negligence liability," this court explained that " '[t]here may be nuisances that do not involve negligence, and there may be negligence that does not produce a nuisance (though it causes other injury). But negligence is one way in which a nuisance may be caused, and where that is the case there is no distinction—the two coalesce.' . . . 1 F. Harper et al., Torts (3d Ed. 2006) § 1.23, pp. 10[1]–102." *Fisk* v. *Redding*, supra, 656 n.9; see also 4 Restatement (Second), Torts § 822, comment (c), p. 110 (1979) ("[N]egligent interference with the use and enjoyment of land is private nuisance in respect to the interest invaded and negligence in respect to the type of conduct that causes the invasion. Many interests other than those in the

In addition, the complaint relied on the same allegations of negligence in support of both causes of action.

The plaintiff does not, however, argue that the court erred in granting a directed verdict as to the statutory causes of action alleged in counts five through eight of the operative complaint or the negligence per se claims in counts nine and ten; in fact, the plaintiff's principal appellate brief does not mention those claims at all. In its reply brief, the plaintiff states in a footnote that, "[s]ignificantly, the trial court's decision granting the defendants' motion for directed verdict was silent as to the plaintiff's statutory causes of action," but does not present any further argument with respect to those causes of action.

It is well established that "[f]or this court judiciously and efficiently to consider claims of error raised on appeal . . . the parties must clearly and fully set forth their arguments in their briefs. We do not reverse the judgment of a trial court on the basis of challenges to its rulings that have not been adequately briefed." (Internal quotation marks omitted.) *Jalbert* v. *Mulligan*, 153 Conn. App. 124, 133, 101 A.3d 279, cert. denied, 315 Conn. 901, 104 A.3d 107 (2014). "Whe[n] an issue is merely mentioned, but not briefed beyond a bare assertion of the claim, it is deemed to have been waived." (Internal quotation marks omitted.) *Connecticut Coalition Against Millstone* v. *Connecticut Siting Council*, 286 Conn. 57, 87, 942 A.2d 345 (2008). Because the plaintiff failed to raise or brief any claim challenging the trial court's ruling with respect to counts five through ten of the complaint, we conclude that the plaintiff has waived any such claim.

use and enjoyment of land may be invaded by negligent . . . conduct, and it is only when an interest in the use and enjoyment of land is invaded that an action for private nuisance and an action based on the type of conduct involved are actions for the same cause, and are not to be distinguished but identified.").

B

As discussed previously, the trial court's ruling directing a verdict in favor of the defendants was based on its determination that the plaintiff did not present sufficient evidence to establish that the defendants were negligent, had possession or control of the oil tank, or proximately caused the plaintiff's damages. The plaintiff claims that it presented sufficient evidence with respect to each of those issues. We address each issue in turn.

1

We first address the plaintiff's claim that the court erred in determining that the plaintiff failed to present evidence that the defendants were negligent. The plaintiff argues that Kopley's testimony provided a sufficient basis from which the jury could have found that the defendants were negligent. Specifically, the plaintiff relies on Kopley's testimony that (1) the defendants improperly used an indoor oil tank outdoors and failed properly to maintain that tank, and (2) the defendants failed to undertake proper remediation efforts after the oil spill. We agree with the plaintiff that there was sufficient evidence for the jury to find that the defendants were negligent.

"In order to make out a prima facie case of negligence, the plaintiff must submit evidence that, if credited, is sufficient to establish duty, breach of duty, causation, and actual injury. . . . A defendant's duty and breach of duty is measured by a reasonable care standard, which is the care [that] a reasonably prudent person would use under the circumstances." (Citation omitted; internal quotation marks omitted.) *Rawls* v. *Progressive Northern Ins. Co.*, 310 Conn. 768, 776, 83 A.3d 576 (2014). "It is well settled that the question of reasonable care under the circumstances is a question for the jurors, to which we ask them to bring their common

experiences to bear in assessing the wisdom of the plaintiff's action." *O'Brikis* v. *Supermarkets General Corp.*, 34 Conn. App. 148, 151 n.1, 640 A.2d 165 (1994).

Regarding the defendants' alleged negligence, Kopley testified that he physically inspected the tank shortly after the incident. During that inspection, he saw holes in the bottom of the tank with stains around them, indicating that was the source of the leak. He also saw a brass tag on the top of the tank indicating that the tank was "for indoor use only." In addition, Kopley reviewed photographs taken by the Santa service technician on the day the leak was reported, which depicted the condition of the tank at that time. The photographs showed that the tank was sitting on concrete blocks that were buried in the dirt so that the tank was almost touching the ground and surrounded by overgrown grass and weeds. The photographs also showed that a fuel gauge that was supposed to be connected to the top of the tank had broken off, which would have allowed water to enter the tank. Kopley testified that the conditions of the tank showed that it had not been properly maintained.

Kopley also testified that the use of an indoor tank and broken fuel gauge likely caused the holes in the tank. In particular, Kopley testified that the holes appeared to be the result of corrosion and explained that the defendants' use of an indoor oil tank and their failure to repair the broken fuel gauge both were likely factors in causing that corrosion. He testified that an outdoor oil tank is either double walled or contains an internal bladder that holds the oil and an external steel structure surrounding it, which provides a secondary containment so that, in the event of a leak in the internal layer, the outer layer will prevent the oil from discharging to the ground. Kopley also testified that an indoor tank like the one used by the defendants does not contain a secondary containment, so any leak will cause

oil to discharge to the ground. In addition, he testified that, when an indoor tank is placed outdoors, exposure to temperature changes can cause condensation to form inside the tank, which results in corrosion. Kopley further testified that the broken fuel gauge would have allowed water to enter the tank, which also would have contributed to the corrosion. In his spill investigation report dated August, 2023, which was admitted into evidence as a full exhibit, Kopley wrote that the information he reviewed "document[ed] [that] the heating oil tank failure [was] due to the lack of maintenance and use of an inappropriate tank for outdoor use . . . ."

Finally, Kopley testified that the defendants did not take appropriate action after the leak to investigate and remediate the contamination. In particular, he testified that investigation of an oil spill should begin in the area of the spill "within days" to determine the extent of the contamination. As noted previously, Kopley further testified that the defendants did not properly investigate or remediate the contamination because they only excavated the soil directly beneath the oil tank. The defendants did not conduct any groundwater or soil vapor testing or take steps to remove contaminated groundwater. Kopley also testified that the defendants' failure to investigate or remediate the contamination from the 284 Linwood Avenue property made it impossible for the plaintiff to properly remediate its own property.

The defendants contend that the jury could not have relied on Kopley's testimony to find that the defendants were negligent because Kopley "did not actually perform any investigations at 284 Linwood [Avenue]." In support of that argument, the defendants rely on Kopley's deposition testimony in which he testified that he did not do any "investigative or remediative work" relating to 284 Linwood Avenue and that he had not

physically been to the defendants' property.[12] The defendants argue that Kopley's deposition testimony demonstrates that "he did not actually investigate 284 Linwood [Avenue]."

We are not persuaded by the defendants' argument. On redirect examination, Kopley testified that he had, in fact, been to 284 Linwood Avenue and physically inspected the oil tank. He testified that he took photographs at that time, which were admitted into evidence as part of his spill investigation report dated August 31, 2020, and which indicate that he was physically present at 284 Linwood Avenue while the tank was still on the property. He further clarified that, when he was asked during his deposition whether he had done any "investigative or remediative" work at 284 Linwood Avenue, he understood the question to be asking whether he had conducted environmental investigation or remediation of the contamination, and that he did not consider his inspection of the oil tank to fall into that category.

Although the defendants could have relied on Kopley's deposition testimony to argue to the jury that it should not credit his opinions regarding the cause of the leak, a directed verdict is not warranted merely because there

---

[12] The deposition transcript was not marked as an exhibit. At trial, the defendants' counsel read portions of the transcript and asked Kopley whether it was an accurate reflection of his testimony, to which he agreed. Specifically, Kopley was asked at his deposition, "what investigative and remediative work have you done that relates to 284 Linwood Avenue?" Kopley replied, "None." He also was asked at his deposition whether he had "the ability to testify about any investigative or remediative work you've done on 284 Linwood Avenue?" Kopley replied, "I have been . . . studying this spill from 284 [Linwood Avenue] as it's affected 186 [Linwood Avenue]. So, I have not physically walked over the [property] line . . . but I have been subject to and that spill at 284 [Linwood Avenue] has been the subject of my actions on 186 [Linwood Avenue]. . . . Have I been on 284 [Linwood Avenue]? No, of course not. . . . Have I studied 284 [Linwood Avenue's] issues, yes, as it's impacted 186 [Linwood Avenue]." Finally, he was asked at his deposition, "you've never been on 284 [Linwood Avenue] have you?" Kopley replied, "No. . . . Other than a look across the fence."

is conflicting evidence in the record; rather, the court should grant a directed verdict only if "a jury could not reasonably and legally have reached any other conclusion." (Internal quotation marks omitted.) *Farrell* v. *Johnson & Johnson*, supra, 335 Conn. 417. "If there is conflicting evidence . . . the fact finder is free to determine which version of the event in question it finds most credible." (Internal quotation marks omitted.) *Fink* v. *Golenbock*, 238 Conn. 183, 210, 680 A.2d 1243 (1996). Kopley's testimony provided a sufficient basis for the jury to find that the defendants failed to exercise reasonable care in maintaining the oil tank and in their remediation efforts following the oil spill. Accordingly, we conclude that there was sufficient evidence for the jury to find that the defendants were negligent.

2

We next address the plaintiff's contention that the court erred in determining that there was insufficient evidence that either McGoldrick or Linwood was in possession or control of the oil tank. We agree that the evidence was sufficient for the jury to find that both McGoldrick and Linwood had control of the oil tank.[13]

This court has explained that "[t]he word control has no legal or technical meaning distinct from that given

---

[13] In its reply brief, the plaintiff argues for the first time that it "was never required to present evidence of the defendants' possession or control of the oil tank." Specifically, the plaintiff argues that possession or control is an element of a premises liability cause of action but is not an element of either ordinary negligence or private nuisance. The plaintiff further contends that, because "[t]his is not a premises liability case . . . the plaintiff should not be held to premises liability requirements." The plaintiff, however, did not raise this claim before the trial court or in its principal appellate brief, and "we generally decline to address a claim raised for the first time in a reply brief . . . ." (Citation omitted.) *State* v. *Hill*, 307 Conn. 689, 697 n.6, 59 A.3d 196 (2013). Moreover, because we conclude that the plaintiff presented sufficient evidence of the defendants' possession or control of the oil tank, we need not address the plaintiff's claim that it was not required to prove possession or control as an element of its claims.

in its popular acceptation . . . and refers to the power or authority to manage, superintend, direct or oversee." (Internal quotation marks omitted.) *Sweeney* v. *Friends of Hammonasset*, 140 Conn. App. 40, 50, 58 A.3d 293 (2013). A person has possession of land if he or she is " 'in occupation of the land with intent to control it.' " *Millette* v. *Connecticut Post Ltd. Partnership*, 143 Conn. App. 62, 70, 70 A.3d 126 (2013), quoting 2 Restatement (Second), Torts § 328E, p. 170 (1965). Whether a defendant has possession or control over property or a condition thereon is generally a question of fact for the jury. See *State* v. *Tippetts-Abbett-McCarthy-Stratton*, 204 Conn. 177, 185, 527 A.2d 688 (1987) ("the question of whether a defendant maintains control over property sufficient to subject him to [public] nuisance liability normally is a jury question"); *Domogala* v. *Molin*, 57 Conn. App. 525, 528, 749 A.2d 676 (2000) ("In light of the evidence presented, the issue of control of the premises, a question of fact . . . was in conflict. The court therefore should not have concluded that a jury could not, without speculation, have returned a verdict for the defendant . . . ." (Citation omitted.)).

In support of its argument that the jury reasonably could have found that both McGoldrick and Linwood had possession or control over the oil tank, the plaintiff first relies on evidence that McGoldrick contacted Santa about the oil spill and communicated with Santa about the leak. Specifically, Peter Russell, Santa's president, provided a copy of customer account notes maintained by Santa concerning the 284 Linwood Avenue account, a redacted version of which was admitted as a full exhibit. Russell testified that Santa maintains such notes on a software system for every customer, which documents every customer contact and "tells a story of what happens on certain dates when we have contact with a customer." A redacted version of the note from the date of the oil spill states: "Per Bob Shaw . . . no

hot water—tank out of oil. Tank empty, [it's] leaking out [of] the bottom. I put customer on a can. . . . [McGoldrick] said he would call [S]anta tomorrow . . . ." An invoice from the same date indicates that Shaw was the Santa technician that responded to the call. In addition, the invoices from Santa for its work related to the oil tank were addressed to "McGoldrick Investment Property." A jury reasonably could infer from this evidence that McGoldrick was Santa's point of contact for issues relating to the oil tank, that he contacted Santa on the day of the spill, and that he communicated with Shaw about the next steps to be taken following the spill. As the plaintiff argues, this evidence suggests that "McGoldrick had power or authority regarding the oil tank on the day of the oil release and assumed management responsibilities in connection with the oil release."

Moreover, as the defendants concede, McGoldrick was the sole member and manager of Linwood, which in turn owned 284 Linwood Avenue.[14] Kopley's spill investigation report from February, 2023, attaches two letters from Sovereign Consulting, Inc. (Sovereign), regarding remediation work relating to the incident, both of which were addressed to Linwood with a salutation reading: "Dear Mr. McGoldrick." The first letter, dated January 18, 2021, documents excavation and testing that was completed at 284 Linwood Avenue on December 30, 2020. The second letter, dated June 22, 2021, contains a proposal for additional investigation work relating to the spill. The letter begins by stating that Sovereign was submitting the proposal "for your

---

[14] We note that the property field card for 284 Linwood Avenue, which was attached to Kopley's August, 2020 spill investigation report, indicates that McGoldrick owned the property directly from 1994 through 2005, at which time he transferred ownership to Linwood. Thus, the evidence indicates that McGoldrick had an ownership interest in the property, either directly or derivatively through Linwood, for more than twenty-five years prior to the incident.

review and approval," and closes by inviting McGoldrick to "contact [Sovereign] if you have any questions or require additional information pertaining to this proposed work scope." These letters support the inference that Linwood was responsible for any investigation and remediation work at 284 Linwood Avenue following the oil spill, and that McGoldrick, in his role as sole member and manager of Linwood, had authority to direct Linwood's response. We conclude that, on the basis of this evidence, the jury reasonably could have found that McGoldrick and Linwood had " 'authority to manage, superintend, direct or oversee' " the maintenance of the oil tank. *Sweeney* v. *Friends of Hammonasset*, supra, 140 Conn. App. 50.

The defendants argue that the jury could not find McGoldrick personally liable based on this evidence because it does not show that he "was acting as anything other than [Linwood's] sole member," which the defendants contend is not sufficient to pierce the corporate veil of Linwood. It is well established, however, that a member of a limited liability company may be held liable for his or her own tortious conduct "without requiring the piercing of the corporate veil . . . ." (Citation omitted.) *Sturm* v. *Harb Development, LLC*, 298 Conn. 124, 133, 2 A.3d 859 (2010). Although a member of a limited liability company "does not incur personal liability for [the company's] torts merely because of his official position," if he "commits or participates in the commission of a tort, whether or not he acts on behalf of [the company], he is liable to third persons injured thereby." (Internal quotation marks omitted.) *Ventres* v. *Goodspeed Airport, LLC*, 275 Conn. 105, 141–42, 881 A.2d 937 (2005), cert. denied, 547 U.S. 1111, 126 S. Ct. 1913, 164 L. Ed. 2d 664 (2006). "[T]he issue of whether a corporate officer has committed or participated in the wrongful conduct of a corporation is a question of fact . . . ." Id., 142; see also, e.g., *Scribner*

v. *O'Brien, Inc.*, 169 Conn. 389, 403–404, 363 A.2d 160 (1975) (evidence that president of construction company was present on job site and personally supervised construction of house and driveway sufficient to hold him individually liable for defects in construction); *Joseph General Contracting, Inc.* v. *Couto*, 144 Conn. App. 241, 257–58, 72 A.3d 413 (2013) (court reasonably found that sole member of limited liability company was liable for causing debris to be buried underneath foundation on construction site where he worked on construction project and there was no evidence of any intervening cause), rev'd in part on other grounds, 317 Conn. 565, 119 A.3d 570 (2015). Thus, McGoldrick's liability is not diminished by the fact that he had control of the oil tank only in his role as member and manager of Linwood.[15]

3

We next address the plaintiff's contention that the trial court erred in determining that the plaintiff failed to present evidence to establish proximate cause. In support of its argument, the plaintiff relies on Kopley's testimony that (1) the oil that leaked from the defendants' tank migrated to the plaintiff's property, (2) the heating oil found on the plaintiff's property was not from a preexisting source of contamination, and (3) the defendants' failure to address the contamination following the spill prevented the plaintiff from properly remediating the contamination and increased the cost of the remediation. We agree that the plaintiff presented

---

[15] The defendants also argue that, because there was evidence that Santa "delivered oil to 284 Linwood [Avenue] for several years" and "that its employees were instructed and trained not to deliver oil if doing so would create a safety risk or spill risk," the evidence suggests that the defendants relied on Santa to maintain the oil tank. Even if a jury could find that the defendants relinquished all control over the oil tank simply because they hired Santa to provide heating oil, as discussed previously in this opinion, the fact that there is conflicting evidence in the record is not a sufficient basis to grant a directed verdict.

sufficient evidence for the jury to find that the defendants proximately caused the plaintiff's damages.

"[T]he test of proximate cause is whether the defendant's conduct is a substantial factor in bringing about the plaintiff's injuries. . . . The existence of the proximate cause of an injury is determined by looking from the injury to the negligent act complained of for the necessary causal connection. . . . This causal connection must be based upon more than conjecture and surmise." (Internal quotation marks omitted.) *Ugrin* v. *Cheshire*, 307 Conn. 364, 374–75, 54 A.3d 532 (2012).

Kopley testified that, when there is a sudden release of a large quantity of oil, it seeps through the soil to the surface of the water table and then "starts to flow sideways because it's being driven down by the weight of the additional product . . . ." He testified that, "as that product [the oil] is released, it flow[ed] downward, outward on the water table surface and in an easterly direction . . . ." In his August, 2023 spill investigation report, which was admitted as a full exhibit, Kopley further explained that the topography of the surrounding area supported the conclusion that the oil would have migrated from the location of the spill to the plaintiff's property; specifically, he explained that the "nearly flat groundwater surface [in the area] would be vulnerable to radial spread of contamination," and that "[t]he mass of the initial release combined with the driving force of rainfall percolation through the soils has likely driven the [oil] eastward on to . . . 186 Linwood Avenue . . . ."

Kopley also testified that the oil found on the plaintiff's property was from the defendants' oil tank and not from another source. He testified that, approximately one month after the leak, he installed monitoring wells at 186 Linwood Avenue and found approximately

1.5 feet of floating petroleum product in the groundwater. He testified that the petroleum was easily identified as heating oil because of its bright red color and distinctive smell. Kopley further testified that the monitoring wells continued to show the presence of heating oil as recently as the week before trial. In addition, Kopley testified that, although there were contamination issues at 186 Linwood Avenue prior to the oil spill, those issues were on the eastern side of the property, whereas the heating oil was found on the western side. He also testified that the prior issues involved different contaminants; in fact, he testified that in thirteen years of groundwater monitoring at 186 Linwood Avenue, he had never detected any indication of heating oil prior to this incident.

Finally, Kopley testified that the defendants' failure properly to address the oil spill exacerbated the contamination of the plaintiff's property and increased the cost of the remediation. Specifically, he testified that, following the release of oil into the ground, it is important to begin investigation and remediation at the source of the spill as soon as possible in order to "beat the spread" and "make that [area of contamination] as small as possible . . . ." In addition, Kopley testified that the most effective remediation plan would be to address the contamination from 284 Linwood Avenue using a method called vacuum extraction, in which powerful vacuum trucks are used to remove the contaminated groundwater. That process would be repeated several times as the oil percolates through the soil to the groundwater, until the groundwater quality complies with state regulations. Kopley testified that beginning the process as soon as possible after the spill would have prevented the spread of contamination and decreased the amount of time necessary to complete the remediation. He further testified that conducting

the remediation entirely from 186 Linwood Avenue would take significantly longer and be more expensive.

In arguing that the evidence was insufficient to establish proximate cause, the defendants contend that Kopley's testimony that there was a history of contamination at 186 Linwood Avenue undermined his conclusion that the oil spill at the defendants' property was the cause of the contamination at issue in this case. As noted previously, however, Kopley testified that the previous contamination at 186 Linwood Avenue occurred on the opposite side of the property and did not involve heating oil. The defendants also argue that Kopley "acknowledged that he lacked sufficient data to model the purported spread of oil from 284 Linwood [Avenue]." In fact, however, Kopley testified that, using best practices accepted by both state and federal environmental authorities, he had sufficient data to determine the spread of the contamination from the oil spill.[16]

Moreover, it is well established that "[i]t is the [jury's] exclusive province to weigh the conflicting evidence and to determine the credibility of witnesses. . . . The [jury] can . . . decide what—all, none, or some—of a witness' testimony to accept or reject." (Internal quotation marks omitted.) *Micalizzi* v. *Stewart*, 181 Conn. App. 671, 691, 188 A.3d 159 (2018). "[T]he issue of proximate causation is ordinarily a question of fact for the trier. . . . It becomes a conclusion of law only when the mind of a fair and reasonable [person] could reach

---

[16] In the portion of the testimony cited by the defendants, in response to a question on cross-examination whether he had sufficient data, Kopley testified that "[w]e have sufficient data, and we could use additional sufficient data." He went on to explain that, while he "can always use more data" to provide a more definitive model of the contamination spread, he stood by his conclusions regarding the cause of the contamination and the cost to remediate it. On redirect examination, Kopley reiterated that "the facts are fairly clear" that the heating oil contamination on 186 Linwood Avenue "was directly related to the release of heating oil from the 284 [Linwood Avenue] property undoubtedly."

only one conclusion; if there is room for a reasonable disagreement, the question is one to be determined by the trier as a matter of fact." (Internal quotation marks omitted.) *Augustine* v. *CNAPS, LLC*, 199 Conn. App. 725, 730, 237 A.3d 60 (2020). In the present case, Kopley's testimony provided a sufficient basis from which the jury could have found that the defendants' negligence was a substantial factor in causing the plaintiff's damages. Accordingly, we conclude that the trial court erred in directing a verdict in favor of the defendants on counts one through four of the complaint.

## II

We next address the plaintiff's claim that the trial court erred in ordering the redaction of portions of the account notes regarding Santa's interactions with McGoldrick following the oil spill. We conclude that the trial court erred by excluding the evidence in question.

The following additional procedural history is relevant to this claim. As noted previously, during Russell's testimony, the plaintiff sought to admit notes maintained by Santa regarding the 284 Linwood Avenue account. The defendants agreed that some entries could be admitted but objected to the admission of others. After excusing the jury, the court asked the defendants' counsel to further explain the objection. As relevant here, the defendants objected to the admission of a note dated June 4, 2020, that read: "Rob—stop delivery tank leaking owner changing out per [B]ob's [email]. [McGoldrick] was upset that we contacted [DEEP] regarding the oil tank leak at the cottage. He called John Santa to complain. John recommended that Mark Inderdohnen call him to explain why we had to call [DEEP]. Mark called [McGoldrick] who continued to use profane language, so the call was discontinued." The plaintiff also objected to a portion of the note from the date of the oil spill; see part I B 2 of this opinion;

that indicated that McGoldrick told Santa that "he was going to change the tank out himself." The defendants argued that the challenged portions of the notes were hearsay, related to subsequent remedial measures, and were not relevant.

Immediately following the defendants' argument, the court indicated that it would order the challenged portions of the note redacted, but did not initially state the ground on which it had sustained the objection. After a colloquy between the court and the defendants' counsel clarifying the portions that would be redacted, the plaintiff's counsel asked for permission to be heard on the objection, to which the court responded: "No. Okay. It's not relevant." Without entertaining further argument, the court asked the clerk to bring the jurors back into the courtroom.

The following standard of review and legal principles are relevant to the plaintiff's claim. "To the extent [that] a trial court's admission [or exclusion] of evidence is based on an interpretation of the Code of Evidence, our standard of review is plenary. For example, whether a challenged statement properly may be classified as hearsay and whether a hearsay exception properly is identified are legal questions demanding plenary review. . . . We review the trial court's decision to admit [or exclude] evidence, if premised on a correct view of the law . . . for an abuse of discretion." (Internal quotation marks omitted.) *No. 2 Fraser Place Condominium Assn., Inc.* v. *Mathis*, 225 Conn. App. 534, 550, 316 A.3d 813, cert. denied, 350 Conn. 905, 323 A.3d 342 (2024).[17]

---

[17] Ordinarily, "[i]n addition to the burden of demonstrating an erroneous evidentiary ruling, a party seeking reversal of a judgment must also demonstrate that the challenged ruling was harmful, meaning that it likely affected the outcome." *No. 2 Fraser Place Condominium Assn., Inc.* v. *Mathis*, supra, 225 Conn. App. 550. In the present case, "[b]ecause we address this claim as an issue likely to arise on remand, we need not address questions of harmless error in the present appeal." *State* v. *Raynor*, 337 Conn. 527, 561 n.20, 254 A.3d 874 (2020).

Section 4-1 of the Connecticut Code of Evidence provides that " '[r]elevant evidence' means evidence having any tendency to make the existence of any fact that is material to the determination of the proceeding more probable or less probable than it would be without the evidence." "Relevance does not exist in a vacuum. . . . To determine whether a fact is material . . . it is necessary to examine the issues in the case, as defined by the underlying substantive law, the pleadings, applicable pretrial orders, and events that develop during the trial. Thus, relevance of an offer of evidence must be assessed against the elements of the cause of action, crime, or defenses at issue in the trial. The connection to an element need not be direct, so long as it exists." (Internal quotation marks omitted.) *Angel C.* v. *Commissioner of Correction*, 226 Conn. App. 837, 846, 319 A.3d 168, cert. denied, 350 Conn. 908, 323 A.3d 1091 (2024).

As explained previously, in granting the defendants' motion for a directed verdict, the trial court determined that the plaintiff failed to present evidence that McGoldrick had possession or control of the oil tank. The redacted portions of the account notes were relevant to that issue. First, evidence that McGoldrick told Santa that "he was going to change the tank out himself" would have further supported the inference that McGoldrick had control over the oil tank. See, e.g., *Panaroni* v. *Johnson*, 158 Conn. 92, 99, 256 A.2d 246 (1969) ("[t]he making of repairs by the landlord, in and of itself, may denote a retention of control or may be an indicia of limited, temporary or full control"). Second, evidence that McGoldrick reacted angrily when he learned that Santa had reported the oil spill to DEEP would have supported the inference that McGoldrick bore responsibility for the alleged improper maintenance of the oil tank. As the plaintiff argues, the jury could have inferred from McGoldrick's allegedly angry response to Santa

calling DEEP that he "understood that he and/or [Linwood] were responsible for the environmental impact of the fuel oil spill."

The defendants argue that, even if the redacted portions of the account notes were relevant, we should affirm the trial court's ruling on the basis that the excluded evidence referenced subsequent remedial measures.[18] See, e.g., *Geremia* v. *Geremia*, 159 Conn.

---

[18] The defendants also argue that we should affirm the trial court's ruling because the redacted portions of the account notes contain hearsay. Prior to offering the account notes as an exhibit, the plaintiff elicited testimony from Russell relevant to establishing that the account notes were admissible under the business record exception to the hearsay rule. See Conn. Code Evid. § 8-4. In their appellate brief, the defendants, relying on our decision in *Midland Funding, LLC* v. *Mitchell-James*, 163 Conn. App. 648, 656, 137 A.3d 1 (2016), argue that the plaintiff failed to present evidence to establish that the software system that Santa used to create the account notes was reliable. See id. ("the proponent of the computer generated business records must establish that the basic elements of the computer system are reliable" (internal quotation marks omitted)).

As noted previously, the defendants objected to the challenged portions of the account notes on three different grounds: that they contained hearsay, that they related to subsequent remedial measures, and that they were not relevant. The court initially sustained the objection without indicating the ground on which it was doing so. When the plaintiff asked to be heard regarding the objection, the court refused, stating, "[i]t's not relevant." Had the court sustained the defendants' objection on the ground that it was hearsay, the plaintiff would have the opportunity to elicit additional testimony from Russell to establish that the software system was reliable. Under these circumstances, we decline to address whether the court properly could have sustained the defendants' objection on hearsay grounds.

The defendants also argue that the plaintiff waived its right to challenge the court's ruling excluding portions of the account notes because the plaintiff "did not make a clear record of [its] objections during trial." This argument ignores that it was the defendants, not the plaintiff, who objected to the admission of the account notes; as the offering party, the plaintiff was not required to object to the defendants' objection. Because the court sustained the objection on relevance grounds, the plaintiff's only obligation was to ensure that there was an adequate record for this court to review whether the excluded portions of the account notes were relevant, which the plaintiff did by having the unredacted version marked for identification. See *Finan* v. *Finan*, 287 Conn. 491, 495, 949 A.2d 468 (2008) ("[t]he purpose of marking an exhibit for identification is to preserve it as part of the record and to provide an appellate court with a basis for review" (internal quotation

App. 751, 779, 125 A.3d 549 (2015) ("[w]e have long held that this court may affirm a trial court's proper decision, although it may have been founded on a wrong reason" (internal quotation marks omitted)). Although the defendants are correct that evidence of subsequent remedial measures are "inadmissible to prove negligence or culpable conduct in connection with the event," such evidence "is admissible when offered to prove controverted issues such as ownership [or] control . . . ." Conn. Code Evid. § 4-7 (a); see also *Smith* v. *Greenwich*, 278 Conn. 428, 447, 899 A.2d 563 (2006) ("'[i]n several cases, we have admitted . . . evidence [of subsequent remedial measures] when the defendant's control of the hazardous instrumentality is at issue in the suit' "). Even assuming, therefore, that the redacted portions of the account notes constitute evidence of subsequent remedial measures, that evidence was admissible to prove McGoldrick's control of the oil tank. Accordingly, we conclude that the court abused its discretion in sustaining the defendants' objection to the redacted portions of the account notes.

The judgment is reversed with respect to counts one through four of the complaint and the case is remanded for a new trial on those counts; the judgment is affirmed in all other respects.

In this opinion the other judges concurred.

---

marks omitted)). Accordingly, the plaintiff did not waive its claim that the court erred in sustaining the defendants' objection to the account notes.